HIGHLANDS INSURANCE
COMPANY, Appellant,

v.

The CITY OF GALVESTON Acting By and Through ITS BOARD OF TRUSTEES OF the GALVESTON WHARVES, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, International Surplus Lines Insurance Company, and Underwriters At Lloyds & Companies, Appellees.

No. A14–85–970–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 6, 1986.
Rehearing Denied Dec. 18, 1986.

Jerry V. Walker, Houston, for Highlands Ins. Co.

Joseph Newton, Houston, for National Union Fire Ins. Co.

Benjamin R. Powel, Otto D. Hewitt, Jr. and Valin Woodward, Galveston, for City of Galveston.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

■ This appeal involves the interpretation of insurance policies to determine whether the appellant, as excess insurer, or the appellee insurance companies, as underlying insurers, must pay the loss claimed by the City of Galveston, the assured. The policies of the underlying insurers indemnified the city for any "loss damage or expense of whatsoever nature" to property "for which the assured may be liable or may assume liability." We must decide whether this language obligates the insurers to pay losses resulting from damage to a third party's property even though that property was never under the assured's care, custody or control. We hold that the policies do cover the losses and reverse and remand.

A barge loaded with rice was pierced by a bolt protruding from a pier at the Galveston Wharves. The barge sank and its owners and the cargo owners sued the City of Galveston, which owns the wharves and operates them through its appointed Board of Trustees of the Galveston Wharves.

The city called upon its four insurers to respond under their policies, but all denied coverage. The city filed suit originally seeking a declaratory judgment determining whose policy covered the loss. After settling the barge and cargo owners' claims by entering into an agreed judgment, the city amended its petition and sought damages for the amount of its settlement. Appellant Highlands Insurance Company (Highlands) has denied coverage on the contention that its "umbrella" or "bumbershoot" policy operates solely as excess coverage and that the loss is fully covered under the policies of the three appellee companies. The City of Galveston has filed a crosspoint urging the same error in the alternative.

Each appellee company issued the city what the companies call "all risk" policies of property insurance. National Union Fire Insurance Company of Pittsburgh, Pennsylvania, provided fifty percent coverage; International Surplus Lines Insurance Company provided ten percent coverage; and Underwriters at Lloyds & Companies provided forty percent coverage. (For the sake of brevity we will refer to these three appellee companies as the National insurers.) The National insurers filed a motion for summary judgment contending that the loss was not covered under the terms of the policy. Highlands also moved for summary judgment. The trial court granted the National insurers' motion and denied the motion of Highlands. A bench trial was held and final judgment was entered against Highlands for the amount of the city's settlement, plus attorney's fees and pre-judgment interest. The pertinent insuring language in each of the three National policies is identical and found in typewritten endorsements rather than pre-printed forms. It reads:

> To indemnify the Assured for any loss, damage or expense of whatsoever nature to wharves and/or property or every description, both real and personal, of the

Assured or others for which the Assured may be liable or may assume liability ... while located on premises owned, leased, used or occupied by the Board of Trustees of the Galveston Wharves and situated in the Port of Galveston, Texas or while such property may be temporarily removed for repair or otherwise from such premises.

The terms "liable" and "liability" are not defined in the policy.

Appellant Highlands contends that the word "liable" referred to the assureds' legal liability for the loss.

The National insurers maintain that the term "liable," as used in their policies, does not mean legally liable, but only responsible. They argue that since theirs are policies of property insurance, the city has no insurable interest unless the barge and cargo had been in its care, custody and control. The parties agree that the barge and cargo were not in the care, custody and control of the city or the wharves.

■ We agree with Highlands. The critical insuring language is "for which the assured may be liable *or* may assume liability." Since both the word "liable" and the phrase "assume liability" are used they should be read to have significantly different meanings. To us the word "liable" plainly means and includes legal liability. The phrase "may assume liability" may invoke elements such as care, custody and control, accountability, bailor-bailee relationships, tariff provisions, contractual agreements, responsibility, bills of lading and other relationships and factors that may effect direct contractual coverage for damage to property of others without regard to negligence.

■ We understand the distinction between property insurance and liability insurance. Many policies involve both. A policy of property insurance is a personal contract for indemnity for the insurable interest possessed by the insured at the time of the issuance of the policy, and also at the time of the loss. *See generally, Maryland Casualty Co. v. Palestine Fash-*

*ions, Inc.,* 402 S.W.2d 883, 888 (Tex.1966); *McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.,* 515 S.W.2d 32 (Tex.Civ. App.—Dallas 1974, writ ref'd n.r.e.); *Cumis Insurance Society, Inc. v. Republic National Bank,* 480 S.W.2d 762 (Tex.Civ. App.—Dallas 1972, writ ref'd n.r.e.). Property insurance policies are "intended solely to indemnify the insured for his actual monetary loss by the occurrence of the disaster; unless the insured has sustained an actual loss, the insurer has no liability." 4 J. Appleman, Insurance Law & Practice § 2107 (rev.1969). Liability policies, on the other hand, insure against loss arising out of legal liability, usually based upon the assured's negligence. *See Members Mutual Insurance Co. v. Hermann Hospital,* 664 S.W.2d 325 (Tex.1984); *Brightwell v. Rabeck,* 430 S.W.2d 252, 255 (Tex.Civ.App. —Fort Worth 1968, writ ref'd n.r.e.); 6 B J. Appleman, Insurance Law & Practice § 4261 (rev.1979).

■ Whether or not the policies before us are property policies, liability policies, or both, is to be determined from a reading of the policies themselves in their entirety. In construing the insurance policies we look to the plain language of the contract, and such language will be given effect when the parties' intent may be discerned from that language. *Glover v. National Insurance Underwriters,* 545 S.W.2d 755, 757 (Tex.1977). When the language used is subject to two or more reasonable interpretations, the construction that affords coverage will be adopted. *Blaylock v. American Guarantee Bank Liability Insurance Co.,* 632 S.W.2d 719, 721 (Tex.1982). A single insurance policy can provide for different types of insurance. *Ayre v. Brown & Root, Inc.,* 678 S.W.2d 564, 566 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■ We read the insuring language quoted above to provide both property and liability coverage. The policies are "all risk" policies. The only limitation in the insuring language concerns where the property is situated. Further, paragraph 11 of the policies provides: "In the event of

the liability of the Assured being contested with the consent of these Assurers, this insurance is also to pay its proportion of the cost which the Assured shall thereby incur and be compelled to pay." If the policies provided property insurance only, there would be no need for paragraph 11.

The cases cited by appellant[1] are not dispositive of the issue before us. All involved fire insurance policies issued to bailees. In each case the property of others was in the custody of the insured, and the issue was whether the word "liable" referred to the assured's general custodial responsibility for the property (in which case the property of others in the assured's custody would be covered regardless of the assured's lack of legal liability for the cause of the loss) or whether the word "liable" referred to the assured's legal liability for the loss. The issue before us is whether the National policies insure the city for loss to property even though that property was not in its care, custody and control. If the National insurers had intended to provide property insurance only and restrict that insurance to cover property under the city's care, custody or control, they could have said so in their policies.

The only limitation to coverage under the policies is that the property concerned be "located on premises owned, leased, used or occupied by the Board of Trustees of the Galveston Wharves and situated in the Port of Galveston, Texas." The parties had not discussed this limitation in their briefs until questioned about it by this court during submission. The barge was punctured while docked at Galveston Wharves Pier 38. After taking on its load, it was moved adjacent to the Galveston Wharves Pier 12, where it ultimately sank due to the punctured hull.

■ We hold that the waters adjacent to the piers at which the barge was damaged and sank were part of the premises owned, leased, used or occupied by the Board of Trustees of the Galveston Wharves. None of these terms was defined in the policies. We are bound to interpret them broadly. *See American Fidelity & Casualty Co. v. Traders & General Insurance Co.*, 160 Tex. 554, 334 S.W.2d 772 (1959); *Shelman v. Western Casualty & Surety Co.*, 1 Kan. App.2d 44, 562 P.2d 453 (1977, opinion approved).

The trial court erred in finding that the National policies provided no coverage for the loss in question and its summary judgment in favor of appellees was improper. Highland's first point of error and the city's crosspoint are sustained.

We also hold that the trial court erred in denying Highland's motion for summary judgment and sustain Highland's second point of error.

The judgment of the court below is reversed and the cause remanded with instructions that the court enter judgment in accordance with this opinion.

---

1. *Folger Coffee Co. v. Great American Insurance Co.*, 333 F.Supp. 1272 (W.D.Mo.1971); *United States v. Globe & Rutgers Fire Ins. Co.*, 104 F.Supp. 632 (N.D.Tex.1952), *aff'd*, 202 F.2d 696 (5th Cir.1953); *Home Ins. Co. v. Peoria & P.U. Ry. Co.*, 178 Ill. 64, 52 N.E. 862 (Ill.Sup.Ct.1899);

*Penn v. Commercial Union Fire Ins. Co.*, 233 Miss. 178, 101 So.2d 535 (1958); *Rouse v. Albany Insurance Co.*, 257 N.C. 267, 125 S.E.2d 424 (1962); *Germania Insurance Co. v. Anderson*, 40 S.W. 200 (Tex.Civ.App.1897, no writ).