U.S. Court of Appeals for the First Circuit
No. 97-432

ACADIA INSURANCE COMPANY

v.

MICHAEL MCNEIL & a.

May 22, 1998

*McLane, Graf, Raulerson & Middleton*, of Manchester (*Bruce W. Felmly* on the brief and orally), and *Thacher Proffitt & Wood*, of New York, New York (*Marilyn L. Lytle* on the brief), for the plaintiff.

*Burns, Bryant, Hinchey, Cox & Rockefeller, P.A.*, of Dover (*Christine M. Rockefeller* on the brief and orally), for defendant Michael McNeil.

*Krasner Professional Association*, of Farmington (*Emmanuel Krasner* on the brief and orally), for defendant George McNeil.

*Hoch & McHugh*, of Boston, Massachusetts (*Timothy R. McHugh* on the brief), and *Shaines & McEachern*, of Portsmouth (*Robert A. Shaines* on the brief), for The American Institute of Marine Underwriters, as *amicus curiae*.

BROCK, C.J. The United States Court of Appeals for the First Circuit (*Selya*, J.) has certified to us the following question of law, *see* SUP. CT. R. 34, concerning a yacht policy issued by the plaintiff, Acadia Insurance Company:

> Does the N.H. Rev. Stat. Ann. § 412:2(II) apply to the liability component of an ocean marine insurance policy issued in New Hampshire?

For the reasons stated below, we answer in the affirmative.

The relevant facts are as follows. In July 1995, the plaintiff issued a yacht policy to Michael McNeil (insured). The policy only extended coverage for "private pleasure" use and navigation of the yacht within inland lakes and rivers of five States for seven months of the year. The policy includes a section entitled "liability insurance" extending coverage for

> damages for all loss of life, bodily injury and property damage which occur during the policy period and for which [the insured] become[s] legally liable to pay by reason of [the insured's] ownership, operation, or maintenance of the insured property.

This section excludes coverage "for any liability between or among members of [the insured's] family."

In January 1996, defendant George McNeil, the insured's father, filed an action in superior court against the insured claiming bodily injuries and consequential damages resulting from the insured's negligent operation of his boat. The plaintiff denied coverage and filed a declaratory judgment action against the insured in the United States District Court for the District of New Hampshire. George McNeil filed a petition for declaratory judgment in the superior court seeking a determination that the intra-family claims exclusion is invalid under New Hampshire law. *See* 412:2, II (Supp. 1997). At the plaintiff's request, the federal district court ordered removal of the state court actions and, subsequently, consolidated them with the declaratory judgment action then pending in the federal district court. When the insured and Acadia cross-moved for summary judgment, the District Court (*Barbadoro*, J.) ruled that RSA 412:2, II invalidated the intra-family claims exclusion. The plaintiff appealed to the United States Court of Appeals for the First Circuit.

The court of appeals analyzed the predominant purpose of the policy, "as measured by the dimensions of the contingency insured against and the risk assumed," to determine the nature of the

insurance. It concluded that the policy "constitutes an ocean marine policy within the federal courts' admiralty jurisdiction" and that the liability section of the policy did not "transform it into a general liability policy," but certified to us the question concerning the applicability of RSA 412:2, II to the liability component of marine insurance policies.

RSA 412:2, II provides that "[n]o *liability policy* issued or delivered in this state shall contain any exclusion which would preclude coverage for intra-family or inter-spousal claims." (Emphasis added.) The plaintiff essentially argues that the statute applies only to general liability policies, and that the New Hampshire Insurance Code distinguishes marine insurance policies from general liability policies and regulates them separately.

■ "In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Welch v. Director, N.H. Div. of Motor Vehicles*, 140 N.H. 6, 8, 662 A.2d 292, 293 (1995) (quotation omitted). We generally discern legislative intent from the plain language of the statute, *see Petition of Walker*, 138 N.H. 471, 474, 641 A.2d 1021, 1024 (1994), but we may "review legislative history to aid in our analysis," *K & J Assoc. v. City of Lebanon*, 142 N.H. 331, 333, 703 A.2d 253, 254 (1997).

"Liability policy" is not specifically defined within RSA chapter 412, which regulates liability insurance. RSA 412:1 (1991), however, suggests the scope of the chapter to include "any policy of insurance against loss or expense by reason of claims made upon the [in]sured for damages on account of bodily injuries suffered by . . . any . . . person, or on account of damage to or the destruction of property." *Cf. Hein v. Nationwide Ins. Co.*, 106 N.H. 378, 381, 213 A.2d 197, 199 (1965) (concluding that uninsured motorist coverage is not liability insurance because it does not protect insureds against liability incurred to others). Foreign jurisdictions support this interpretation of the term "liability policy." *Cf. Hudson v. Farm Family Mut. Ins. Co.*, 142 N.H. 144, 147-48, 697 A.2d 501, 503-04 (1997) (reviewing other courts' interpretations of the term "sudden and accidental").

■ The term "liability insurance policy" is broadly defined as a policy that protects an insured against the condition of becoming liable. *Vines v. United States Fidelity & Guaranty Company*, 267 F. Supp. 436, 437 (E.D. Tenn. 1967); *see Highlands Ins. Co. v. City of Galveston*, 721 S.W.2d 469, 471 (Tex. Ct. App. 1986). "Liability insurance is a contract by which one party promises upon a

consideration to compensate or reimburse the other if he shall suffer loss from a specified cause." *Fidelity General Ins. Co. v. Nelsen Steel & Wire Co.*, 270 N.E.2d 616, 620 (Ill. App. Ct. 1971); *see Highlands Ins. Co.*, 721 S.W.2d at 471. The loss insured against arises "out of legal liability, usually based upon the [insured's] negligence." *Highlands Ins. Co.*, 721 S.W.2d at 471. Liability insurance policies may be distinguished from indemnity policies, such as traditional marine insurance policies, by the responsibility an insurer assumes under the terms of the policy. *See Hansen v. Continental Ins. Co.*, 186 N.E. 420, 421 (N.Y. 1933); 1 L. RUSS & T. SEGALLA, COUCH ON INSURANCE 3D § 1:58 (West Group 1997). Unlike an indemnity policy, which requires an insurer to reimburse the insured only for payments actually made, a liability policy holds the insurer "responsible for any liability incurred by the insured while the policy was effective." *Miller v. American S.S. Owners Mut. Protection*, 509 F. Supp. 1047, 1048 (S.D.N.Y. 1981). A policy is a "true liability" policy if it protects against liability, and an "indemnity" policy if it reimburses insureds only for actual losses sustained. RUSS & SEGALLA, *supra* § 1:34.

The legislative history of RSA 412:2, II also supports a broad interpretation of "liability policy." In 1988 or 1989, the New Hampshire Department of Insurance began withholding approval for any policy that excludes liability coverage for intra-family claims. *See* SENATE COMM. ON INSURANCE, HEARING ON SB 56 (Jan. 28, 1993). In 1991, the insurance department supported a bill that would invalidate policies with intra-family claim exclusions. *Id.* In response, the legislature enacted RSA 412:2-a, II (Supp. 1997), barring intra-family claim exclusions in automobile insurance policies.

In 1993, the senate committee on insurance held a hearing to discuss a subsequent request by the insurance department to expand the applicability of the prohibition contained within RSA 412:2-a, II to cover *all* liability policies. *Id.* During the senate committee hearing, Dave Nichols of the insurance department testified that the proposed bill, Senate Bill 56, "is a correction of an error that was made in the 1991 session" when a similar bill was placed into a statute "which applied only to automobile insurance." *Id.* He explained that the insurance department intended the first bill introduced in 1991 to apply the prohibition of intra-family claim exclusions to all liability policies. *Id.; see* N.H. S. JOUR. 196 (1993). The senate committee recognized that Senate Bill 56 "cover[s] auto but [is] intended to be more expansive"; that is, it applies to all

liability policies. SENATE COMM. ON INSURANCE, HEARING ON SB 56 (Jan. 28, 1993). The legislature subsequently enacted RSA 412:2, II. The placement of the prohibition against intra-family claims exclusion in the same section of RSA chapter 412 that addresses approval of all policies covered by RSA 412:1, *see* RSA 412:2 (Supp. 1997), reveals that the legislature intended the bar to apply to all policies containing liability coverage within the meaning of RSA 412:1. *Cf. Wilkinson v. Achber*, 101 N.H. 7, 9, 131 A.2d 51, 53 (1957) (concluding that if legislature intended statute's coverage to be less inclusive, it would have so provided).

■ Accordingly, we conclude that the legislature intended "liability policy" in RSA chapter 412 to mean any policy that imposes upon an insurer an obligation to compensate an insured for any liability the insured incurs during the policy's term, including losses arising out of the insured's legal liability for negligence. Thus, RSA 412:2, II applies to all policies which extend liability coverage regardless of the predominant purpose of the policy, marine or otherwise.

We next address the plaintiff's argument that RSA chapter 412 cannot apply to ocean marine insurance policies because of the "unique regulatory treatment" of marine insurance by the legislature and insurance department, including an exemption by the insurance department from the filing requirements of RSA 412:2, I (Supp. 1997). We find the plaintiff's arguments unpersuasive.

■ First, the plaintiff's reliance upon a general statement by the insurance department is misplaced because the insurance department's actual treatment of marine policies cannot aid our interpretation of the term "liability policy" under RSA 412:2, II, absent supportive statutory language or administrative rules. *See Mottolo v. U.S. Fidelity & Guaranty Co.*, 127 N.H. 279, 282-83, 498 A.2d 760, 763 (1985). Our review of the administrative rules reveals that no guidelines on this issue have been formally adopted by the insurance department. RSA 412:2, I, however, mandates submission to and approval by the insurance commissioner of *all* policies "covered by RSA 412:1 or RSA 264." Neither RSA chapter 264, which covers accidents and financial responsibility, nor RSA 412:1, specifically exempt marine insurance policies containing liability coverage from the filing requirement.

■ Furthermore, we disagree with the plaintiff's arguments concerning the separate and distinct treatment of marine insurance. The predecessor of RSA 401:5 (1983) prohibited insurance compa-

nies from engaging in business involving both marine insurance and liability insurance. Laws 1917, 80:5. Subsequent amendments, including the current version of RSA 401:5, relaxed the restrictions on transacting different types of insurance business, as defined by RSA 401:1 (1983 & Supp. 1997), to permit insurers to issue policies containing, *inter alia*, liability insurance for bodily injury and property damage *and* marine insurance for loss or damage to the insured's interest in a boat, freight, or cargo. *See, e.g.*, Laws 1947, 182:4. The legislature clearly intended to eliminate the antiquated fragmentation of the insurance industry and to authorize most insurers to conduct business involving most combinations of the types of insurance explained in RSA 401:1. *Cf.* RSA 401:1, :5 (restricting companies from combining life insurance business with other insurance business and establishing limits on allowable combinations for companies issuing assessable policies).

■ "A single insurance policy can provide for different types of insurance." *Highlands Ins. Co.*, 721 S.W.2d at 471; *see Northwestern Nat. Ins. Co. v. Mortensen*, 284 N.W. 13, 16 (Wis. 1939) (concluding that inland marine insurance policies may be subject to the fire insurance rating act). Although marine insurance policies were traditionally indemnity policies that protected against losses resulting from the "perils of the sea," *Hansen*, 186 N.E. at 421; *see Northwestern Nat. Ins. Co.*, 284 N.W. at 16; RUSS & SEGALLA, *supra* § 1:58, the current statutory scheme, RSA 401:1, :5, permits an insurer to offer a traditional marine indemnity policy or a multiple line insurance policy that combines liability and marine insurance to insure against all hazards or liabilities, including personal injury liability. *See Hansen*, 186 N.E. at 421; RUSS & SEGALLA, *supra* § 1:58. Whether a particular insurance policy, marine or otherwise, contains components of liability coverage must be determined by reviewing the policy in its entirety. *See Highlands Ins. Co.*, 721 S.W.2d at 471.

■ While the court of appeals determined that the policy in this case constitutes a marine insurance policy, we must determine whether it contains liability coverage as defined under RSA 412:1, and thus is subject to RSA 412:2, II. "The interpretation of insurance policy language is ultimately an issue of law for this court to decide." *Whitcomb v. Peerless Ins. Co.*, 141 N.H. 149, 150, 679 A.2d 575, 576 (1996). The yacht policy contains a liability section requiring the plaintiff to "pay damages for all loss of life, bodily injury and property damage." Payment is contingent upon the loss occurring during the policy period and the insured becoming legally

liable to pay by reason of "ownership, operation, or maintenance." We hold that this liability coverage falls within the meaning of "liability policy" under RSA 412:1, and, thus, the policy is subject to RSA 412:2, II.

We have reviewed the parties remaining arguments and find them to be without merit and warranting no further discussion. *See, e.g., Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Remanded.*

All concurred.