TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00719-CV







Hector Valdez, Appellant



v.



Colonial County Mutual Insurance Company, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 96-03968, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING









DISSENTING OPINION







 Within seven weeks of purchasing insurance for his 1992 Plymouth Acclaim
automobile, appellant Hector Valdez sold the vehicle, received money for the sale, and transferred
title to his adult son, Rene. With a new co-signer, Liliana De La Garza, Rene obtained financing
for the vehicle from Mercantile Bank in Brownsville. Although Valdez informed Colonial of the
change in lienholder two days after the sale, he never informed Colonial of the change in title and,
hence, the change in ownership. Because Rene was working in Mexico City at the time of the sale
and, according to Valdez's affidavit, "could not take the car to Mexico City," he left the vehicle
in the parking lot of Valdez's apartment building. The car was stolen from the lot a year later.

 This is an action for a declaratory judgment of nonliability on a property insurance
policy issued by Colonial to Hector Valdez. Colonial brought suit against Hector Valdez and
others seeking a declaratory judgment that Hector Valdez's automobile insurance policy did not
provide coverage to him for the loss of a stolen automobile for which he did not have legal or
equitable title. (1) The trial court rendered judgment in favor of Colonial. Since the parties agree
that Valdez must have an insurable interest in the automobile to recover for the theft, it becomes
our task to determine what right Valdez had to the vehicle and whether it was sufficient to
constitute an insurable interest. Because the summary judgment evidence establishes as a matter
of law that Valdez had no insurable interest at the time of the loss, I believe that the trial court
correctly granted summary judgment in favor of Colonial, and I respectfully dissent.


The Policy

 The policy in question was issued in renewal of a policy that Valdez first procured
on November 9, 1994. The policy period of the renewed policy was from November 9, 1995
through November 9, 1996. On December 29, 1994, Valdez submitted a Change of Policy
Request to Colonial to report the new lienholder as Mercantile Bank. (2) The question is whether
the insurance policy issued to Hector Valdez affords property loss coverage to him for the theft
of an automobile he no longer owned. We turn for guidance first to the language of the policy.

 The policy specifically prohibits the transfer of any interest in the policy without
the company's written consent. (3) An endorsement specifically excludes the automobile from
coverage if it is not garaged and used in the United States and, further, it excludes coverage to any
person who does not live in the United States.

 The policy is standard in form and provides comprehensive coverage to "the named
insured." In addition to the Declarations page, the policy consists of seven parts. The parties do
not dispute that the suit for declaratory judgment implicates only the portion of the policy
concerning property damage or loss to the automobile, designated Part D. Liability for loss is
limited to the cash value of the stolen or damaged property, the amount necessary to repair or
replace the property, or the amount stated in the Declarations portion of the policy.

 In addition to property loss or damage, the policy also contains coverage for
liability and personal injury coverage. Part A of the policy provides liability coverage for
"covered persons," which includes "you or any family member for the ownership, maintenance
or use of any auto," and "any person using your covered auto." For purposes of the policy,
"family member" includes "a person who is a resident of your household." Coverage for liability
loss under Part A is, of course, much broader than for property loss under Part D. Liability
coverage follows the insured to any vehicle he drives.

Insurable Interest

 Colonial asserts that its policy definition of "your covered auto" imposes an
ownership requirement for coverage. Because Hector Valdez sold the vehicle covered by the
policy, received money, and transferred title of the vehicle to a third-party purchaser before the
loss, Colonial contends that, as a matter of law, Valdez no longer had an insurable interest in the
car and that the car was not "a covered auto" under the policy. Valdez contends that the insurance
policy covers any vehicle listed on the Declarations page and that he had an insurable interest in
the vehicle because he possessed and had control over the vehicle when it was stolen. Valdez
argues that ownership is irrelevant to the issue of insurable interest.

 It is well settled in Texas that an insured need only have an insurable interest in
property to be covered for property loss damage. An insurable interest exists when an insured
derives pecuniary benefit or advantage from preservation and continued existence of the property,
or would sustain pecuniary loss from its destruction. See State Farm Mut. Auto. Ins. Co. v. Kelly,
945 S.W.2d 905, 907 (Tex. App.--Austin 1997, writ denied). While actual ownership is not
required, see Smith v. Eagle Star Ins. Co., 370 S.W.2d 448, 450 (Tex. 1963), I believe it is
incorrect to state, as the majority does in its interpretation of Snyder, that ownership is irrelevant
or unimportant to the determination of an insurable interest as it applies to property insurance.

 The majority ignores an important distinction in the arena of insurance law: A
fundamental difference in the requirement of an insurable interest exists between property and
liability coverage. See Highlands Ins. Co. v. City of Galveston, 721 S.W.2d 469, 471 (Tex.
App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.). Property insurance policies are personal
contracts for indemnity, (4) and are intended solely to indemnify the insured for his actual monetary
loss by the occurrence of the disaster. "Unless the insured has sustained an actual loss the insurer
has no liability." 4 Appleman, Insurance Law and Practice § 2107, at 16-17 (1969). (5) Liability
policies, on the other hand, insure against loss arising out of legal liability, usually based upon the
insured's negligence. Id. (citing Members Mut. Ins. Co. v. Hermann Hosp., 664 S.W.2d 325
(Tex. 1984)). 

 We have been cited to no case in which an insured who knowingly sold and
transferred title to the insured property prior to loss was found to possess an insurable interest in
a property loss claim. It is a prerequisite to the validity of a policy insuring against loss of, or
damage to, an automobile that the person to whom it is issued have some interest in the property
insured. The lack of an insurable interest, either at the time of the policy or at any time thereafter,
renders the policy void and defeats a recovery on it. "A person has an insurable interest in a
vehicle who derives a benefit from the existence of the property insured, or would suffer loss if
it were damaged or destroyed by the peril against which it is insured." 7 Blashfield, Automobile
Law and Practice, § 291.3 at 115-16 (3d ed. 1987).

 With respect to liability insurance, however, it is axiomatic that an insurable interest
may exist apart from ownership of the automobile. Id. § 291.3, at 121. Texas courts have
recognized that what constitutes an insurable interest sufficient to support liability coverage of an
automobile is different than that of property or casualty insurance. See Gulf Ins. Co. v. Winn, 545
S.W.2d 526, 528 (Tex. Civ. App.--San Antonio 1976, writ ref'd n.r.e.). In the case of liability
insurance, the risk and hazard insured against is not the damage to, or loss of, the property named
in the policy, but against the loss and injury caused by the use of the named property for which
the insured might be liable.

 The distinction between liability and property insurance, then, becomes the
threshold focus in an analysis of whether an insurable interest exists or the nature of the interest
required. The majority opinion states that Valdez premises his argument that the policy language
defines the vehicle as a covered automobile "primarily on the Texas Supreme Court case of Snyder
v. Allstate Insurance Co." Valdez does not cite Snyder in his brief, and although the majority
acknowledges that the case is distinguishable, it relies on Snyder to find the existence of a material
fact dispute as to whether property damage coverage existed for Valdez. Snyder is distinguishable
on its facts and the law it applies.

 In the first instance, Snyder simply does not speak to the issue of insurable interest
in the context of property insurance. The issue in Snyder is whether the named insured was
covered by an automobile liability policy, not a property damage policy. Snyder v. Allstate Ins.
Co., 485 S.W.2d 769, 770 (Tex. 1972). In Snyder, Allstate Insurance Company issued an
automobile liability policy to J. B. Rhodes, who gave the car to his minor daughter. Thereafter,
the daughter and a friend, Robert Snyder, were involved in a collision while Snyder was driving. 
Allstate brought a declaratory judgment action against Robert Snyder, his father, and their
insurance company seeking a judgment that Allstate had no obligation to defend Robert Snyder
or pay any claim against him arising out of the collision. Thus, the case dealt with the scope of
permission by the insured, J. B. Rhodes, to a permittee, his daughter, and her authority to allow
a third person to operate the owned automobile. The court concluded that Robert Snyder was a
person occupying the "owned automobile" while it was being used by Rhodes's daughter with
permission of Rhodes, the named insured, and that Allstate had an obligation to pay all claims
arising out of the collision up to its policy limits. Snyder, 485 S.W.2d at 772. Because the
definition of "named insured" included "any other person using such automobile with the
permission of the named insured," the only relevant inquiry was the authority for the daughter as
permittee to allow a third person to use the car and whether she consented to such use. Those
facts were undisputed in Snyder.

 In construing liability coverage of a policy, the supreme court in Snyder concluded
that "the fact of ownership is not a material question in this case" because for any "owned
automobile" the coverage extends "to or for the named insured . . . or any other person who
sustains bodily injury, caused by accident, while occupying the owned automobile, while being
used by the named insured . . . or by any other person with the permission of the named insured
. . . ." Snyder, 485 S.W.2d at 772. The court had no occasion to address the requirement of an
insurable interest in the property damage context. (6)

 Snyder, then, does not support the majority's position that "paying a premium and
listing a vehicle on an insurance policy, by definition, characterizes it as an 'owned automobile.'" 
At most, Snyder addresses only the question of what constitutes ownership sufficient to support
liability coverage--as opposed to property coverage--on an automobile. See Gulf Ins. Co., 545
S.W.2d at 527.

 In each of the cases cited by the majority in support of its conclusion, the insureds
either owned or had reason to believe they owned the insured property. See Smith, 370 S.W.2d
at 450 (insured lived on and farmed land on which subject property was located for several years
and had good faith belief of ownership); Kelly, 945 S.W.2d at 908 (no allegation in record that
insured knew or should have known that vehicle he purchased was stolen); Dean v. Lowery, 952
S.W.2d 637, 640 (Tex. App.--Beaumont 1997, pet. denied) (insured's father had executed bill
of sale to transfer vehicle to insured and insured made note payments). (7) Valdez, on the other
hand, intentionally sold the vehicle to his son. Upon completion of the transaction, it was
uncontested that Rene Valdez held title to the vehicle.

 Moreover, in each case cited by the majority, the destruction of or damage to the
insured property had a direct, and not a mere remote or consequential, effect upon the insured. 
Each named insured either derived a pecuniary benefit by the preservation of the insured property
or suffered a pecuniary loss when the property was destroyed or damaged. No such direct effect
exists in the instant case. When Rene went to Mexico to work, he left the vehicle parked at
Valdez's apartment residence, but Valdez's use of the car was dependent on Rene's continued
permission. (8) Valdez did not receive any benefit from the vehicle nor did he suffer any pecuniary
loss from its theft. See Jones v. Texas Pac. Indem. Co., 853 S.W.2d 791, 795 (Tex.
App.--Dallas 1993, no writ).


Summary Judgment

 The procedural posture of this case is important. The trial court rendered summary
judgment in favor of Colonial. The majority would reverse and remand on the ground that Valdez
has raised a material question of fact. Because I believe that Colonial carried its burden and
established that it is entitled to summary judgment as a matter of law, and that Valdez failed to
raise a material fact question, I would affirm the judgment of the trial court.

 We follow the usual standard of review in summary judgment cases. The basis of
a motion for summary judgment is that no genuine issue exists for any material fact and the
movant is entitled to summary judgment as a matter of law. See Tex. R. Civ. P. 166a(c). When
reviewing a summary judgment granted on general grounds, we are obligated to consider whether
any theories asserted by the summary judgment movant will support the summary judgment. 
"When a trial court's order granting summary judgment does not specify the ground or grounds
relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories
advanced are meritorious." Rogers v. Ricane Enters. Inc., 772 S.W.2d 76, 79 (Tex. 1989). In
addition, the appealing party must negate all grounds on appeal. See State Farm Fire & Cas. Co.
v. S.S., 858 S.W.2d 374, 381 (Tex. 1993).

 As recited by the majority, we review the evidence in the light most favorable to
the nonmovant, accept all of the nonmovant's factual assertions as true, and resolve any doubt in
the nonmovant's favor. See Nixon v. Mr. Property Management Co., 690 S.W.2d 545, 548-49
(Tex. 1985). As the movant, the burden was on Colonial to establish that there was no genuine
issue of material fact and that it was entitled to judgment as a matter of law. Id. Once Colonial
established a right to summary judgment, the burden of proof shifted to Valdez to present evidence
sufficient to raise a material question of fact. See City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678 (Tex. 1979).

 In support of its motion for summary judgment, Colonial relied upon (1) Valdez's
pleadings which included a verified motion to transfer venue, (2) Valdez's Response to Colonial's
Request for Admissions, and (3) an affidavit of the insurance agent with attachments. Valdez's
summary judgment proof consisted of a two-paragraph affidavit. The following facts were
undisputed:



 The stolen vehicle was not owned by Hector Valdez at the time of the loss;

 The vehicle had been sold to Rene Valdez approximately one year before the
loss;

 The Texas title for the vehicle listed Rene Valdez as owner at the time the
vehicle was stolen;

 Mercantile Bank was a lienholder in the purchase of the vehicle by Rene Valdez,
and Liliana De La Garza was a co-signer on the note;

 Colonial never approved the assignment of rights under the policy from Hector
Valdez to Rene Valdez; and 

 Rene Valdez resided in Mexico.




Because Colonial carried its burden that it was entitled to judgment as a matter of law and that
there was no genuine issue of material fact, the burden then shifted to Valdez to adduce proof
sufficient to raise a fact question.

 After reciting that he purchased the insurance on November 9, 1994 and transferred
title to Rene who was working in Mexico (9) on December 27, 1994, Valdez stated in his affidavit: 
"Since my son could not take the car to Mexico City, I kept the car at my house wherein I used
the vehicle and controlled its use." In the second paragraph, Valdez described an agreement he
made with his son to reimburse him for the loss "since the vehicle was in my possession and
control" when it was stolen. Valdez explained that the agreement was made "in order to avoid
any type of litigation within the family."

 Valdez's mere recital that he had possession and control of the vehicle when it was
stolen is a legal conclusion (10) unsupported by any facts. The affidavit was devoid of any facts
showing, for example, the nature or extent of use or control, the terms of the "agreement" he had
with Rene, the actual owner, concerning the possession, use or control of the vehicle, (11) or even
who paid the premiums on the insurance. As a matter of law, the affidavit is insufficient to raise
a fact issue to defeat the summary judgment motion. (12) His affidavit did not set forth such facts as
would be admissible in evidence as required by Rule 166a(f). An averment that Valdez had
"possession and control," without more, has no probative force to defeat a motion for summary
judgment. (13)

 Valdez also argues, and the majority accepts, the proposition that his agreement
--after the loss--to reimburse Rene for the loss of the vehicle is sufficient to confer an insurable
interest, or at least, to raise a fact question as to whether one exists. (14) I disagree. Valdez's
promise to reimburse Rene for the loss was made after the theft of the vehicle; hence, the promise
does not affect whether Valdez had an insurable interest in the vehicle either at the time of the
making of the insurance contract or at the time of the theft. See First Preferred Ins. Co. v. Bell,
587 S.W.2d 798, 802 (Tex. Civ. App.--Amarillo 1979, writ ref'd n.r.e.). The insurable interest
of the parties to an automobile insurance contract must be determined by the facts existing at the
time of the loss. (15) Moreover, the fact that Valdez agreed to reimburse Rene for the loss after the
theft is evidence that no implied contract of bailment existed before the loss; indeed, there is no
evidence in the record to indicate that Valdez accepted any responsibilities commensurate with a
bailment. (16)

 Put simply, Valdez has provided no proof of any facts that would give rise to an
insurable interest. At best, he stands in the shoes of a borrower or a gratuitous agent who has no
pecuniary interest in preserving the property. An insurable interest is not held by a person who
has no legal title or equitable interest and merely exercises custody awaiting the immediate
exercise of another's right of possession. Because Colonial has established the transfer of legal
title and equitable interest from Hector Valdez to Rene and Valdez has failed to adduce proof
sufficient to show any interest in the property apart from mere custody, I believe the trial court
correctly granted summary judgment in favor of Colonial.

 I conclude that Valdez has failed to adduce any proof sufficient to raise a fact
question to defeat Colonial's showing of entitlement to summary judgment. Accordingly, as a
matter of law, Valdez does not have an insurable interest in the property that is the subject of the
policy and he should not be able to recover the value of the stolen vehicle under the policy. I
would affirm the judgment of the trial court.



 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Filed: June 17, 1999

Publish

1. The case was settled as to the other defendants. The notice of appeal named only Hector
Valdez as appellant.
2. Except for the addition of Mercantile Bank as a lienholder, no additional information was
provided by Valdez on the request form. Although the form requested changes in information,
including name; additional drivers and their social security numbers, birth date, and relationship
to the insured; additional vehicles; use of vehicle and average mileage; and coverage options, the
only lines completed by Valdez were the change in lienholder and the signature line containing
Valdez's signature.
3. Valdez does not contend that he assigned his rights in the policy to anyone.
4. In property insurance, the insurable interest must exist both at the time of the making of
the contract and at the time of the loss, while in life or liability insurance, it is sufficient if such
an interest exists at the inception of the contract. See Highlands Ins. Co. v. City of Galveston, 721
S.W.2d 469, 471 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.).
5. See also Stillwagoner v. Travelers Ins. Co., 979 S.W.2d 354, 360 (Tex. App.--Tyler
1998, no writ) ("If the insured has no insurable interest, the policy is invalid, there is no loss
under the policy, and no recovery by the insured."); Associated Indem. Corp. v. Walnut Hill
Corp., 220 S.W.2d 301, 305 (Tex. Civ. App.--El Paso 1949, writ ref'd n.r.e.).
6. Even apart from the law applied, Snyder is distinguishable on its facts. The vehicle was
not sold and title had not been transferred from the insured to his minor daughter. Hence, the
right to own, possess, and control the vehicle remained with the named insured. The court stated:
"In this case, it is undisputed that the named insured parent retained the certificate of title in his
name and that he gave permission of use to his minor daughter. The parent-child relationship here
governed how [the daughter] used the car, since it is undisputed that both [the daughter] and [the
father] recognized that [the daughter's] use was subject to the instructions given her by her
father." Snyder v. Allstate Ins. Co., 485 S.W.2d 769, 773 (Tex. 1972). 
7. The holding in Black v. BLC Insurance Co., 725 S.W.2d 286, 288 (Tex. App.--Houston
[1st Dist.] 1986, writ ref'd n.r.e.) is unequivocal: "We hold that [the named insured's] ownership
of the car was a prerequisite to coverage under the policy." 725 S.W.2d at 288. Black, like
Snyder, involved a liability policy. Hector Valdez entered into an arm's length transaction with
his adult son when he sold the vehicle. Rene, by taking title to the vehicle and obtaining new
financing, relegated Valdez to the status of Webster, the named insured in Black with no insurable
interest in the insured property. As the court noted: "A finding of coverage under these facts
would deprive an insurance company of the right to choose its customers and delegate that power
to the insured when choosing a buyer." Id.; see also World Fire & Marine Ins. Co. v. Puckett,
265 S.W.2d 641, 642 (Tex. Civ. App.--San Antonio 1954, writ ref'd n.r.e.) (at time of loss,
insured had completed sales transaction and therefore had no insurable interest).
8. As between the buyer and the seller, the seller has no right to possess or control the
vehicle after the sale. See Gulf Ins. Co. v. Bobo, 595 S.W.2d 847, 848 (Tex. 1980).
9. In his affidavit submitted in response to Colonial's summary judgment motion, Valdez
testified that Rene was already working in Mexico City at the time of the sales transaction. In his
brief on appeal, however, he states that Rene "soon thereafter went away to work in Mexico
City." This contradiction looms large since the entirety of Valdez's proof in the summary
judgment motion is an affidavit composed of two paragraphs.
10. Nor will factual conclusions suffice to defeat a summary judgment motion. Conclusory
factual statements are not proper as summary judgment proof. See Purcell v. Bellinger, 940
S.W.2d 599, 602 (Tex. 1997). Unsupported conclusory statements are not credible and are not
susceptible to being readily controverted. See Tex. R. Civ. P. 166a(c); Ryland Group, Inc. v.
Hood, 924 S.W.2d 120, 122 (Tex. 1996).
11. I find no basis in the record--apart from Valdez's inadmissible conclusions--for the
proposition that Valdez possessed, used, or controlled the vehicle. To survive the motion for
summary judgment, Valdez was required to adduce actual proof to raise a fact question with
respect to possession, use, or control. Even an implied contract of bailment must rest upon a
substantive foundation and cannot arise from mere conjecture or possibility. See Rust v. Shamrock
Oil & Gas Corp., 228 S.W.2d 934, 936 (Tex. Civ. App.--Amarillo 1950, no writ). The record
is also devoid of any proof that (1) Valdez continued to make the premium payments or (2)
accepted any responsibilities concerning the vehicle. See Hoye v. Like, 958 S.W.2d 234, 237
(Tex. App.--Amarillo 1997, no writ) (although bailor-bailee relationship may be established by
direct or circumstantial evidence, the evidence must show that person sought to be charged as
bailee knew he was assuming the relationship and responsibilities). Valdez did not plead or
otherwise argue in the trial court or before this Court that the requirement of insurable interest was
met by an implied bailment.
12. Because legal conclusions do not constitute competent evidence, they are insufficient to
raise a fact question to defeat a summary judgment motion. See, e.g., Anderson v. Snider, 808
S.W.2d 54, 55 (Tex. 1991) (statement in affidavit by defendant-lawyer that he did not breach 
contract with his client and was not guilty of any negligence or malpractice was wholly
conclusory, rendering it incompetent to support summary judgment); Mercer v. Daoran Corp.,
676 S.W.2d 580, 583-84 (Tex. 1984) (statement in affidavit that loan was "renewed and extended"
was a legal conclusion insufficient to raise an issue of fact); Ellis v. Jansing, 620 S.W.2d 569, 571
(Tex. 1981) (affidavit averring party "held open, notorious, exclusive, continuous and adverse
possession" to property in question held ineffective to raise fact question); Life Ins. Co. of Virginia
v. Gar-Dal, Inc., 570 S.W.2d 378, 382 (Tex. 1978) (statement in affidavit that "all offsets and
payments had not been credited" to a note held insufficient to raise question of fact).
13. See Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984). In Brownlee, the
plaintiff wife sued her former spouse for breach of a written settlement agreement contained in an
agreed judgment of divorce. In response to a motion for summary judgment, the spouse attempted
to raise a fact question in an affidavit by averring that the agreed judgment had been "amended
and modified since the date of their execution and entry . . . including, but not limited to,
modification of my obligation to make either support and/or periodic payments as set forth
therein." Id. The supreme court concluded that the affidavit was insufficient to raise a question
of fact. The court stated: "If this had been a trial on the merits and the only thing to which [the
spouse] testified was that his obligation had been modified, the trial court would have been
required to instruct a verdict against him. [His] affidavit . . . should have gone further and
specified factual matters such as the time, place, and exact nature of the alleged modification." 
Id.
14. The agreement, the entire text of which is set forth in the majority opinion, is also 
conclusory and fails to raise a fact question. It fails to give any of the terms of the agreement,
whether it was oral or written, or even the manner and amount of payment for the loss.
15. A policy of property insurance is a personal contract for indemnity for the insurable
interest possessed by the insured at the time of the issuance of the policy and at the time of the
loss. See, e.g., Maryland Cas. Co. v. Palestine Fashions, Inc., 402 S.W.2d 883, 888 (Tex.
1966); Highlands Ins. Co., 721 S.W.2d at 471; World Fire & Marine Ins. Co., 265 S.W.2d at
642; see also 4 Appleman § 2245, at 167; 7 Blashfield § 291.3 at 114.
16. Like the theatrical device of the deus ex machina, the bailment theory of the majority
and Valdez's after-the-loss reimbursement agreement appear suddenly and unexpectedly just before
the fall of the curtain to provide a contrived solution where there was an insoluble difficulty.


dgment motion. Conclusory
factual statements are not proper as summary judgment proof. See Purcell v. Bellinger, 940
S.W.2d 599, 602 (Tex. 1997). Unsupported conclusory statements are not credible and are not
susceptible to being readily controverted. See Tex. R. Civ. P. 166a(c); Ryland Group, Inc. v.
Hood, 924 S.W.2d 120, 122 (Tex. 1996).
11. I find no basis in the record--apart from Valdez's inadmissible conclusions--for the
proposition that Valdez possessed, used, or controlled the vehicle. To survive the motion for
summary judgment, Valdez was required to adduce actual proof to raise a fact question with
respect to possession, use, or control. Even an implied contract of bailment must rest upon a
substantive foundation and cannot arise from mere conjecture or possibility. See Rust v. Shamrock
Oil & Gas Corp., 228 S.W.2d 934, 936 (Tex. Civ. App.--Amarillo 1950, no writ). The record
is also devoid of any proof that (1) Valdez continued to make the premium payments or (2)
accepted any responsibilities concerning the vehicle. See Hoye v. Like, 958 S.W.2d 234, 237
(Tex. App.--Amarillo 1997, no writ) (although bailor-bailee relationship may be established by
direct or circumstantial evidence, the evidence must show that person sought to be charged as
bailee knew he was assuming the relationship and responsibilities). Valdez did not plead or
otherwise argue in the trial court or before this Court that the requirement of insurable interest was
met by an implied bailment.
12. Because legal conclusions do not constitute competent evidence, they are insufficient to
raise a fact question to defeat a summary judgment motion. See, e.g., Anderson v. Snider, 808
S.W.2d 54, 55 (Tex. 1991) (statement in affidavit by defendant-lawyer that he did not breach 
contract with his client and was not guilty of any negligence or malpractice was wholly
conclusory, rendering it incompetent to support summary judgment); Mercer v. Daoran Corp.,
676 S.W.2d 580, 583-84 (Tex. 1984) (statement in affidavit that loan was "renewed and extended"
was a legal conclusion insufficient to raise an issue of fact); Ellis v. Jansing, 620 S.W.2d 569, 571
(Tex. 1981) (affidavit averring party "held open, notorious, exclusive, continuous and adverse
possession" to property in question held ineffective to raise fact question); Life Ins. Co. of Virginia
v. Gar-Dal, Inc., 570 S.W.2d 378, 382 (Tex. 1978) (statement in affidavit that "all offsets and
payments had not been credited" to a note held insufficient to raise question of fact).
13. See Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984). In Brownlee, the
plaintiff wife sued her former spouse for breach of a written settlement agreement contained in an
agreed judgment of divorce. In response to a motion for summary judgment, the spouse attempted
to raise a fact question in an affidavit by averring that the agreed judgment had been "amended
and modified since the date of their execution and entry . . . including, but not limited to,
modification of my obligation to make either support and/or periodic payments as set forth
therein." Id. The supreme court concluded that the affidavit was insufficient to raise a question
of fact. The court stated: "If this had been a trial on the merits and the only thing to which [the
spouse] testified was that his obligation had been modified, the trial court would have been
required to instruct a verdict against him. [His] affidavit . . . should have gone further and
specified factual matters such as the time, place, and exact nature of the alleged modification." 
Id.
14. The agreement, the entire text of which is set forth in the majority opinion, is also 
conclusory and fails to raise a fact question. It fails to give any of the terms of the agreement,
whether it was oral or written, or even the manner and amount of payment for the loss.
15. A policy of property insurance is a personal contract for indemnity for the insurable
interest possessed by the insured at the time of the issuance of the policy and at the