

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-09-00004-CR

_____


SHERMAN DREW WHITLEY, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 22763


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Sherman Drew Whitley was convicted of theft of more than $100,000.00 but less than $200,000.00. He was sentenced to eight years' imprisonment in the Texas Department of Criminal Justice–Institutional Division, ordered to pay $100,001.00 in restitution and $2,305.00 in court costs. Whitley appeals on the ground that the evidence is legally and factually insufficient to establish he stole property valued at over $100,000.00 but less than $200,000.00. We affirm.

I.      Standard of Review

A.      Legal Sufficiency

A separate analysis is required when analyzing legal and factual sufficiency. Legal sufficiency is simply a tool to determine whether submission of an issue is required. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In other words, if the evidence in this case was insufficient to raise an issue of Whitley's guilt, it should not have been submitted for the fact-finder's resolution. *Id.* When conducting this analysis, we review all of the evidence in the light most favorable to the verdict and determine whether any rational fact-finder could find the essential elements of theft as charged by the indictment beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Clewis*, 922 S.W.2d at 132–33; *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

2

Once we determine the evidence raised issues for the fact-finder's resolution, we will not sit as the thirteenth juror re-evaluating the weight and credibility of the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we give full play to the trier of fact's responsibility to weigh the evidence, resolve conflicts in the testimony, and draw reasonable inferences from basic facts. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis*, 922 S.W.2d at 133; *Bottenfield v. State*, 77 S.W.3d 349, 354 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Jackson*, 443 U.S. at 319).

### B. Factual Sufficiency

Unlike legal sufficiency review, we examine the evidence in a neutral light when assessing factual sufficiency and determine whether the proof of guilt is obviously weak as to undermine confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong and unjust. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Johnson*, 23 S.W.3d at 11; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Harris v. State*, 133 S.W.3d 760, 764 (Tex. App.—Texarkana 2004, pet. ref'd). A clearly wrong and unjust verdict is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).

Because factual sufficiency is an issue of fact, we are not free to re-weigh the evidence and set aside the verdict merely because we feel a different result is more reasonable. *Clewis*, 922 S.W.2d at 135. Instead, we will only ensure that the trial court reached a rational decision, and will

find the evidence factually insufficient only when necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 8–9, 12; *Clewis*, 922 S.W.2d at 133, 135; *Cuong Quoc Ly v. State*, 273 S.W.3d 778, 783 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993)).

### C.     The Hypothetically-Correct Jury Charge

Our analysis of whether the evidence is legally and factually sufficient is measured against the elements of the offense with the same kind of analysis as that applied in the test for a hypothetically-correct jury charge for the case.[1] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The hypothetically-correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. It is used to evaluate both legal and factual sufficiency. *Grotti*, 273 S.W.3d at 281.

Whitley committed theft amounting to a second-degree felony "if he unlawfully appropriate[d] property with intent to deprive the owner of property" valued at "$100,000 or more but less than $200,000." Tex. Penal Code Ann. § 31.03(a), (e)(6) (Vernon Supp. 2008). Appropriation of property is unlawful if it "is without the owner's effective consent." Tex. Penal

---

[1]*Malik* controls "*even in the absence of alleged jury charge error*." *Gollihar v. State*, 46 S.W.3d 243, 255 (Tex. Crim. App. 2001).

4

CODE ANN. § 31.03(b)(1) (Vernon Supp. 2008).  The value of the property is an element of the offense since it defines the grade of the offense.  *Winkley v. State*, 123 S.W.3d 707, 713 (Tex. App.—Austin 2003, no pet.) (citing *Simmons v. State*, 109 S.W.3d 469, 472 (Tex. Crim. App. 2003)).

With the elements of the hypothetically-correct jury charge in mind, we turn to the issue of sufficiency of the evidence.

## II.     The Evidence Was Sufficient to Demonstrate that Whitley Committed Theft

The standards of review do not change when the case involves circumstantial, rather than direct evidence.  *Earhart v. State*, 823 S.W.2d 607, 616 (Tex. Crim. App. 1991).  A case based on circumstantial evidence is built brick by brick.  In other words, "[e]ach fact need not point directly and independently to the guilt" of the accused.  *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).  If a conclusion is warranted by the combined cumulative force of all incriminating circumstances, the evidence is sufficient.  *Id.*

### A.     Evidence at Trial Supported the Verdict

Raymond Knipp is an experienced, self-employed industrial contractor who builds and sells equipment for the food and plastic industry.  He sells specialized, refrigerated "St. Regis" jacketed tanks with dual agitation paddles, along with several other types of tanks and machinery, including dough tros, cherry burrels, and batch holding tanks.  On May 7, Knipp noticed and reported to the police that his stainless steel tanks and accessories started disappearing from his inventory yard.  He

5

prepared a report listing all of the items he believed were stolen from the yard in late April to early May of 2008. Larry Barnes owned a business next to Knipp's. He testified a truck that looked like Whitley's came and left Knipp's property with a big tank on May 2. While on the road on May 9, Knipp saw a truck in front of him pulling one of his St. Regis tanks on a trailer.[2] Knipp immediately called the police. Whitley was arrested as the driver of the truck containing stolen property.

Rebecca Reed from Reed Recycling in Sulphur Springs purchases stainless steel based on weight. Reed testified Whitley brought in sixteen stainless steel tanks to sell between April 21 and May 7, 2008. The receipts for eight sales transactions contained Whitley's signature and were included in the record.

Officer Jimmy Steed testified that Whitley was seen by a police department employee leaving Knipp's property with a tank. He was stopped on his way to Reed's Recycling and showed the police receipts from previous sales to Reed. Steed's interview of Whitley subsequent to his arrest resulted in Whitley's admission that he had been on Knipp's property and was hauling the tanks for an unnamed "powerful" person, possibly the Mafia. Whitley told Steed that his family might be in danger if he did not haul the tanks. However, Whitley also stated he believed the tanks belonged to the unnamed man.

Whitley took the stand and confessed to hauling and selling sixteen tanks identified on the Reed's Recycling receipts. Whitley then provided the excuse that he made an agreement with a

---

[2]The serial number on the tank confirmed it belonged to Knipp.

person named Larry Barnes, who was not the Larry Barnes that testified at trial, to haul the tanks off the property. Because the sign for Larry Barnes's business was close to the property, the gate was unlocked, and the tanks were out in the open, he believed they belonged to the Barnes impersonator. Whitley testified he did not knowingly take the tanks because he believed he was authorized by the impersonator in doing so. He was unable to provide the location and telephone number of the impersonator.

Whitley committed theft if he unlawfully appropriated property with intent to deprive Knipp of the property. TEX. PENAL CODE ANN. § 31.03(a). Here, the trial court, as fact-finder, was the sole judge of the weight and credibility of the evidence. We assume the court resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in the manner supporting the verdict. *King v. State*, 174 S.W.3d 796 (Tex. App.—Corpus Christi 2005, pet. ref'd). It is uncontested that Knipp was the actual owner of the property. Whitley's and Reed's testimony confirmed that at least sixteen tanks were taken from Knipp's property. The appropriation of the tanks was completed without Knipp's consent. Thus, the only disputed issue left for resolution was that of Whitley's affirmative defense.

For a person to act with intent, it must be "his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003). Mistake or an honest, mistaken, claim of right is an affirmative defense to theft because it "negates the element of the fraudulent taking." *Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855 (Tex. Civ. App.—Fort

7

Worth 1974, writ dism'd) (citing *Hudiburg Chevrolet, Inc. v. Globe Indem. Co.*, 394 S.W.2d 792 (Tex. 1965)). This occurs where, though mistaken, a defendant develops the belief that "the property belongs to a third person who has authorized" the defendant to appropriate it. 19 Tex. Jur. 3d *Criminal Law* § 562 (2009). An affirmative defense must be proven by a preponderance of the evidence. TEX. PENAL CODE ANN. § 2.04(d) (Vernon 2003). Intent is most often proved through the circumstantial evidence surrounding the crime. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). In determining whether Whitley had the criminal intent to commit theft, we may consider whether he experienced personal gain from the property. *See Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

Receipts from Reed's Recycling demonstrate Whitley received $4,738.16 cash for the scrap metal. During the interview with Steed, Whitley would not reveal the names of people who were directing him to sell the tanks. Whitley's statement to Steed that he was hauling tanks for money for a "powerful person" who was threatening his family, and could have been a member of the Mafia, conflicted somewhat with his story at trial that he believed an innocent Larry Barnes was just giving him a simple paid job. Information that there was a Larry Barnes impersonator was not relayed to anyone prior to trial. Considering the fact that Whitley was unable to provide any information on the impersonator besides a general description, the trial court was free to discount his testimony as incredible. Viewing the evidence in a light most favorable to the verdict, we cannot conclude the trial court erred in failing to find Whitley proved his affirmative defense by a preponderance of the

evidence. Thus, based on this record, we cannot say that the trial court was irrational in making the inference that Whitley appropriated Knipp's property with intent to deprive him of it. We conclude the evidence was legally sufficient as to every element of the offense, except value discussed below.

Even when we examine the testimony in a neutral light, we cannot say proof of Whitley's guilt as established by Reed, Steed, and by his own admissions, is obviously weak as to undermine confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong and unjust. *Zuliani*, 97 S.W.3d at 594; *Johnson*, 23 S.W.3d at 11. Nothing about the trial court's verdict suggests it is clearly wrong, manifestly unjust, shocking to the conscience, or demonstrates bias. *Santellan*, 939 S.W.2d at 164. Thus, the evidence was factually sufficient as to every element of the offense, except the element of value, discussed below.

### B. Sufficient Evidence Established Value of Property Stolen

The value of stolen property is an element of the offense. *Winkley*, 123 S.W.3d at 713 (citing *Simmons*, 109 S.W.3d at 472). Value is defined as fair market value at the time and place of the offense. TEX. PENAL CODE ANN. § 31.08(a)(1) (Vernon 2003). If fair market value cannot be ascertained, value can be determined by cost of replacement of the property within a reasonable time. TEX. PENAL CODE ANN. § 31.08(a)(2) (Vernon 2003). It has long been the rule in this State that an owner of property can testify to its value. *Sullivan v. State*, 701 S.W.2d 905, 908 (Tex. Crim. App. 1986).

9

Knipp was knowledgeable about the fair market value of the stolen property. At the time of trial, he had been an industrial contractor for twelve years, but had worked in the industry since the 1970s. He attended many auctions where materials to build his equipment were bought, and regularly sold his finished product on the open market. He testified the St. Regis tank, which he witnessed being pulled by Whitley, was "a $30,000 tank." The list of missing inventory Knipp prepared included twenty-three pieces of equipment totaling $166,500.00, in addition to the three tanks recovered. The values of the missing inventory were determined using their "going price," "fair market value," and replacement costs for some of the items. Steed testified that Knipp initially told him he estimated the property to be worth $100,000.00, not counting the $30,000.00 tank. Steed did say that "we have no evidence that Mr. Whitley took, the Dough Tros and those type of things" and that another estimate resulted in a figure of $159,000.00, again not counting the $30,000.00 tank and two more recovered tanks from the Dallas scrap yard that were valued at $10,000.00 and $6,000.00.

In Whitley's favor, Knipp testified that at the time of trial, he had not sold a tank in a couple of years. Knipp did not have receipts for all the stolen tanks, but had computer records indicating he traded about $125,000.00 in labor for them. He did not bring any documentation to prove his evaluation. Whitley testified the tanks were "pitted, corroded and rusted," and "looked used up."

As the finder of fact, the trial court was free to conclude Knipp's estimates of the fair market value of his stolen property was credible. Knipp made a written inventory of all stolen property,

along with the value of the property. Even if one assumes that Whitley's admission that he only hauled sixteen tanks is completely factual, the combined value of any sixteen of the tanks listed on Knipp's inventory exceeds $100,000.00. We give full play to the trial court's responsibility to consider this evidence and draw reasonable inferences to conclude the value of Knipp's stolen property was "$100,000 or more but less than $200,000." TEX. PENAL CODE ANN. § 31.03(e)(6). Further, because of the written inventory and testimony developed in the record regarding value of the tanks, we are ensured that the trial court reached a rational decision regarding value and that there is no suggestion of manifest injustice. *See Johnson*, 23 S.W.3d at 8–9. Thus, both legally and factually sufficient evidence supports the stolen property's valuation.

## III. Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice


Date Submitted:     September 23, 2009
Date Decided:       October 1, 2009

Do Not Publish