**HUDIBURG CHEVROLET, INC., Appellant,**

**v.**

**GLOBE INDEMNITY COMPANY, Appellee.**

**No. 16563.**

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 25, 1964.

Rehearing Denied Oct. 23, 1964.

Kerr, Day & Cook, and Taylor Gandy, Fort Worth, for appellant.

Thompson, Knight, Wright & Simmons, Pinkney Grissom, David S. Kidder and George C. Chapman, Dallas, for appellee.

MASSEY, Chief Justice.

The questions to be resolved relate to the right of recovery by Hudiburg Chevrolet, Inc., hereinafter termed the insured, under two theft insurance policies issued by Globe Indemnity Company, hereinafter termed the insurance company.

The first policy we will call Policy "A". Under it the insurance company agreed to pay for (or on account of) the loss of any vehicle insured thereby caused by theft. Vehicles insured thereby were those "(a) consigned to or owned by the insured and held for sale or used in the insured's business as an automobile dealer * * *, exclusive of automobiles leased or rented to others and automobiles sold by the insured under bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance; * * *." Excluded from coverage under the policy was any vehicle which "is or at any time becomes subject to any bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance not specifically declared and described in this policy." In view of the circumstances hereinafter described there was no liability on the part of the insurance company under and by virtue of the provisions of Policy "A".

The second policy we will call Policy "B". Under it the insurance company agreed to pay for (or on account of) loss of any vehicle insured thereby caused by theft. Unlike Policy "A", Policy "B" did not contemplate nor provide coverage which would require payment to the insured, as for a vehicle "consigned to or owned" by the insured, but rather was in the form of an "extended" coverage to a contract, the basic form of which was liability insurance, i. e., which obligated the company "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property * * * caused by accident and arising out of the hazards hereinafter defined",—and which (under 50A. Garage Keepers' Extra Legal Liability Coverage Endorsement) furthermore obligated the insurance company to pay "for direct loss of or damage including loss of use by theft, hereafter called loss, to automobiles which are the property of others and in the custody of the insured for storage, repair or safe-keeping, sustained under coverages described in Endorsement 50, Garage Keepers' Legal Liability Coverage Endorsement * * * *regardless of the legal liability of the insured.*" (Emphasis supplied) Endorsement 50, Garage Keepers' Legal Liability Coverage Endorsement, is one wherein the insurance company agreed to pay "all sums which the insured shall become obligated to pay by reason of liability imposed by law for direct loss of or damage including loss of use by theft, hereinafter called loss, to automobiles which are the property of others and in the custody of the insured for storage, repair or safekeeping, * * * *." In view of the circumstances hereinafter described there was no liability

on the part of the insurance company under and by virtue of the provisions of Policy "B".

On or about June 13, 1961, while both policies were in full force and effect, a certain Chevrolet truck was taken by Comas Roark from the premises of the insured, without his knowledge or permission and against his expressed desires. Roark was, or claimed to be, the owner of the truck. The insured, as the operator of a garage, had furnished parts in the aggregate value of $688.35, which parts had been incorporated into the physical structure of the truck in the repair thereof performed in and upon its premises. The insured therefore held a lien against the truck in the amount of $688.35 so long as it maintained its possession, or until its charges in said amount should be fully paid or otherwise satisfied.

At the time Roark took the truck we have no doubt that the equitable title thereto was vested in him. There was a purchase price lien upon the truck in favor of the General Motors Acceptance Corporation. A mortgage existed as security for the indebtedness owing, but such instrument was not made a part of the record presented to us. We are left to speculate upon provisions thereof relating to the rights of "repossession" by such lienholder, if any, relative to imposing a possession superior to that of Roark. There was never any suit for lien foreclosure filed.

The complication which arose was undoubtedly born in the belief on the part of the insured and the General Motors Acceptance Corporation that the former had received the truck, on or about May 24, 1961, as one which had been "repossessed" by the latter under some contractual provision in the mortgage. Indeed, the insured had executed an instrument which contractually acknowledged its receipt as a vehicle which the General Motors Acceptance Corporation had "repossessed". Even if there were no dispute relative to the matter, there is uncontradicted evidence that by agreement of all parties, and through the agency of the insured acting for the finance concern, the amount Roark owed on the truck was brought current. General Motors Acceptance Corporation did insist, however, and the insured agreed, that the truck would not be surrendered to Roark until Roark or someone for him had secured a "12 month paid up policy" which would afford insurance protecting the finance company's interest therein.

Roark could not arrange the necessary cash to obtain this form of insurance and became impatient. He felt that if he could get possession of the truck for a few days he could perform a contract of hauling he had obtained, thus securing funds wherewith he could purchase the required policy. Understandably, the insured could not afford to accommodate him. Seizing upon an opportunity, Roark took the truck by using an extra set of keys. Promptly thereafter the insured sought to have him arrested for theft. Upon being taken into custody he made bond, perhaps using money he had intended to apply upon insurance premiums.

Neither the insured nor General Motors Acceptance Corporation were able to peaceably reacquire possession of the truck. It was decided to forego recourse to the courts for a recovery, preferring instead to have the insured make claim under the insurance policies. Demand being made therefor, the insured paid off the mortgage indebtedness owing General Motors Acceptance Corporation. There seems to be no question but that the proper amount was paid under an obligation upon which the insured considered itself bound in order to redeem its contractual liability to the finance company under the receipt the insured had delivered to it. The insurance company denied liability upon both policies of insurance and suit followed.

The trial court concluded that under Policy "A" the insured was entitled to recover the amount of $688.35, the value of the materials incorporated in the repair of the truck. The trial court concluded that nei-

ther General Motors Acceptance Corporation nor the insured (who had succeeded to the finance company's rights) were entitled to recover under Policy "B". Judgment was entered in favor of the insured and against the insurance company for $688.35, plus interest from June 13, 1961.

As heretofore indicated, it is our conclusion that the insurance company is not liable under either policy.

■ Under Policy "A" no form of property other than vehicular was even purported to be insured. The insured's $688.35 in parts had been incorporated into the truck. It could only have been as the result of such incorporation into the vehicle that the insured could have obtained a property interest therein. Yet the truck did not thereby become in any sense a vehicle "consigned to or owned by the insured", much less one which was "held for sale or used in the insured's business". Furthermore, the vehicle in question was encumbered by a mortgage which was not declared or described in the policy of insurance. The insured's $688.35 loss was not contemplated to be covered, nor was it the subject of insurance afforded by the policy.

■ Under Policy "B", under the circumstances existent at the time Roark secured the truck from the premises of the insured it was Roark rather than the insured or General Motors Acceptance Corporation who was actually entitled to claim the protection afforded thereby. Had some unknown third party stolen the truck it would have been its owner, Roark, who would have been entitled to make demand of the insurance company for payment. Of course the insured and General Motors Acceptance Corporation would have been entitled, perforce of their liens, to demand the principal balance owing, but their demands would have been of Roark rather than the insurance company. Their right to receive payments in priority to Roark would necessarily have to be founded in "notice" to the insurance·company, absent which the insur-

ance company could properly discharge its full liability by paying Roark.

The fact that the insured had contractually obligated itself to make payment to General Motors Acceptance Corporation could have had no effect on the liability of the insurance company under the policy contract. It was "legal" liability, to be distinguished from any "contractual" liability, which was contemplated by the policy. The insurance company could not have contemplated an exposure to liability under its policy under some form of contractual liability which did not exist and could not have been anticipated at the time its policy was issued, particularly one entered into respecting a vehicle which was not owned by either party so contracting.

Viewed from the standpoint of the insurance policy the vehicle was the property of Roark. Most certainly may it properly be said that the truck was the property of Roark at the time he resumed its possession on June 13, 1961, for the previously described binding agreement between him, the insured, and General Motors Acceptance Corporation had only been entered into a few days prior thereto. It was pursuant to such agreement that through the insured's delivery of consideration paid by Roark the finance company had brought its accounts current. Under Texas decisions neither the finance company nor the insured had any rights in the property as the owner, their rights being restricted to those connotated by the term "lien", as a lien on personal property is considered and treated under our laws.

Viewed from the standpoint of the insurance policy, Roark was the owner of the truck in question and could not have re-entered into possession of it by any means which would at one and the same time constitute him a thief, and render the insurance company liable to him for any loss resulting from his own theft.

Nothing stated herein is to be construed as a holding that Roark could not be proper-

ly held accountable for the penal offense of theft.

Reversed in part and in part affirmed. Judgment rendered that Hudiburg Chevrolet, Inc. take nothing by its suit against Globe Indemnity Company.