**HUDIBURG CHEVROLET, INC.,**
Petitioner,

v.

**GLOBE INDEMNITY COMPANY,**
Respondent.

No. A–10473.

Supreme Court of Texas.

Oct. 6, 1965.

Rehearing Denied Nov. 3, 1965.

Kerr, Day & Gandy, Fort Worth, for petitioner.

Thompson, Knight, Wright & Simmons, Pinkney Grissom, David S. Kidder and George C. Chapman, Dallas, for respondent.

POPE, Justice.

Hudiburg Chevrolet, Inc., the named insured in two policies issued by Globe Indemnity Company, sued Globe to recover for a loss caused by the theft of a Chevrolet truck tractor that Hudiburg held in storage under a contract with General Motors Acceptance Corporation. Comas Roark, the one from whom GMAC had repossessed the truck, took the truck from Hudiburg's lot without permission. GMAC then demanded that Hudiburg pay its losses, which Hudiburg did by paying $2,428.83, the unpaid balance that Roark owed GMAC. Hudiburg then asserted one claim against Globe for the $2,428.83 it paid to GMAC and another for $688.35 for parts it furnished Roark to install on the truck while stored in Hudiburg's shops. A jury found

that (1) the taking of the truck by Roark was a theft, (2) the truck's reasonable cash market value was $4,000.00, and (3) Hudiburg paid GMAC the sum of $2,428.83. The trial court disregarded these answers and held there was no theft but gave Hudiburg judgment for $688.35 for the parts. The Court of Civil Appeals held that the policies afforded Hudiburg no coverage for either the truck or the parts and denied all recovery. 383 S.W.2d 65. We affirm the Court of Civil Appeals' denial of judgment for the parts, but reverse the judgments below which denied recovery for theft of the truck.

■ Hudiburg has preserved no point complaining of the intermediate court's reversal of the trial court's judgment for $688.35, so we are concerned only with Hudiburg's right to recover for the truck. The basis for the trial court's judgment notwithstanding the verdict was that there was no theft. The first argument advanced in support of that conclusion is that there can be no theft unless the vehicle was taken from the owner and Hudiburg was not the owner. The other argument is that, even if the taking from Hudiburg's possession satisfied the ownership element, Roark, under all the evidence, took the truck under a bona fide claim of right. These are law questions.

Hudiburg Chevrolet, Inc., originally sold the truck to J. W. Parker in July of 1960. Parker paid some cash and owed $4,368.00 under a conditional sales contract. Hudiburg assigned the contract and the legal title to General Motors Acceptance Corporation with recourse. Parker became delinquent in his payments, and GMAC then discovered that in March of 1961 Parker had sold his equity to Comas Roark. There has never been a transfer of the certificate of title from Parker to Roark. Roark made some payments which GMAC accepted, and in May of 1961 he wrecked the truck in Arkansas. Hudiburg learned of the wreck and sent one of its employees to haul the truck to its place of business in Grapevine, Texas. Since Roark was behind on his

payments, GMAC and Hudiburg treated the transaction as a repossession. After the wreck, Roark's insurer cancelled the policy covering the truck. GMAC instructed Hudiburg to hold the truck and on May 24, 1961, Hudiburg signed a "Receipt for Repossessed Car," which showed that Hudiburg was storing the truck for GMAC. Hudiburg agreed, as reflected by the receipt, that the truck, "will not be disposed of until the outstanding balance due General Motors Acceptance Corporation is paid." There was evidence that Hudiburg was storing the truck for GMAC after repossession from Roark.

Roark began negotiations with Hudiburg and GMAC to obtain a release of the truck. He agreed to make the repairs to the truck in Hudiburg's shop; Hudiburg agreed to furnish the parts to Roark at cost; and GMAC agreed to release the truck when Roark complied with certain conditions. The new arrangement between the three parties was evidenced by a letter written by GMAC on June 8 and received by Hudiburg and Roark the next day. As of that date, Roark knew that GMAC had repossessed the truck and he had agreed upon the terms by which he could resume his payments and regain possession. Roark, as conditions to approval of a new contract and the resumption of possession, was required to (1) arrange for the transfer of title from Parker to himself, (2) furnish proof to GMAC that all taxes and transfer fees were paid, and (3) furnish a paid-up twelve-month policy on the vehicle. He also agreed to execute a six-months installment note and a mortgage to secure Hudiburg for the parts furnished Roark at cost. Roark testified and acknowledged that he agreed upon these conditions and that he complied with none of them. On June 13, 1961, Roark took the truck from Hudiburg's lot without the knowledge or consent of anyone. GMAC then made demand upon Hudiburg, its bailee and guarantor, for the unpaid balance of $2,428.83 owed by Roark. Hudiburg paid that amount to GMAC and made a claim against Globe, its insurer, for the theft of the truck by Roark.

The courts below have held that there is no evidence which supports the finding of theft of the truck. The first basis for this conclusion is, as expressed by the Court of Civil Appeals, "the vehicle was the property of Roark." The argument is that Roark owned the truck and could not steal his own property or from himself. The record does not support the intermediate court's conclusion that Roark owned the truck or had the right to its possession. Actually the facts admitted by Roark during the trial are to the contrary. As of June 8, 1961, Roark knew that GMAC had repossessed the truck because of the wreck, the delinquent payments, and the cancellation of his insurance. He knew and testified that before he could reinstate his contract and regain possession he had to meet certain conditions and that he did not meet them. Roark was not and knew that he was not entitled to the possession of the truck that was rightfully under the control of GMAC and stored with Hudiburg under a contract not to release it. Hudiburg had the additional claim to a constitutional lien for the parts furnished, and Roark had agreed to give a note and mortgage payable in six months to cover that obligation. He did not comply with that agreement.

Hudiburg was the named insurer on what has been termed "Policy B" in the course of this case. It is the only one that needs discussion. The trial court defined the term "theft" in connection with its issue inquiring about Roark's theft and did so in these words of Article 1410 of the Penal Code:

"* * * the fraudulent taking of corporeal personal property belonging to another from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking."

■ "Theft" when used in an insurance policy, as it was in Policy B, is given the same meaning it has under the criminal law. See Bomar v. Insurors Indemnity & Ins. Co., 150 Tex. 484, 242 S.W.2d 160 (1951); Indemnity Co. of America v. Slade, 4 S.W.2d 649 (Tex.Civ.App.1928, writ ref.). Even a true owner, who takes from one who is lawfully in possession of property, may be guilty of theft. Art. 1416, Vernon's Ann. Penal Code. There was a theft when a mortgagor took possession of two horses he had placed in the possession of another as security for a debt, Haley v. State, 70 Tex.Cr.R. 30, 156 S.W. 637 (1913), and when the owner of a pistol took it from his pledgee. Lewis v. State, 50 Tex.Cr.R. 331, 97 S.W. 481 (1906). There was a theft when an owner of a watch fraudulently took it from the possession of the man holding it as security for repairs. State v. Stephens, 32 Tex. 155, 156 (1869). There may be a theft, when, as here, the ownership is in one person, and the possession is in another. Arts. 1414, 1415, 1416, 1417, Vernon's Ann. Penal Code; Winn v. State, 138 Tex.Cr.R. 202, 135 S.W.2d 118 (1940); 55 Tex.Jur.2d, Theft, § 22.

■ We must also reject the contention that the evidence shows, as a matter of law, that Roark took the truck under a bona fide claim of right. Proof of such a claim of right is a legal defense to the charge of theft, because it negates the element of a fraudulent taking. Burnaman v. State, 130 Tex.Cr.R. 355, 94 S.W.2d 751 (1936); 6 Cyc. of Automobile Law and Practice, § 3711; 5 Appleman, Insurance Law and Practice, § 3211.

■ Several specific events show that Roark's taking was without a bona fide claim of right to the truck. On May 24, before the truck was repaired, Roark asked permission to remove it from Hudiburg's premises and was refused. After the repairs were made, Hudiburg permitted Roark to test drive it away from the premises only in the company of one of its employees. Roark's bona fide claim of right is based upon his own testimony that he believed he had complied with all of GMAC's requirements because he had brought his payments up to date. On cross-examination, however, he was confronted with the letter GMAC had written to Hudiburg five days before he took the truck. He acknowledged that he was sitting across the desk when K. H. Hudiburg phoned GMAC concerning his, Roark's, resumption of payments and right to regain possession of the truck, and also that he received a copy of the letter. He admitted that he understood the conditions to the new arrangement between him and GMAC and that he had not met those conditions. He testified that he was denied permission to take the truck because the insurance on it had been cancelled and that he knew of this requirement. The day before Roark took the truck, he was in Hudiburg's office again seeking possession of the truck. He asked Hudiburg to call a Dallas insurance agent who would confirm the fact that he had made arrangements for the insurance. Hudiburg called the agent in the presence of Roark, but the agent told Hudiburg no arrangements had been made, that Roark owed him for other insurance, and that he would not cover the truck nor carry Roark.

Hudiburg testified that Roark had threatened to take the truck and, for that reason, he had locked the truck after putting it on his lot that was fenced on three sides with the office building on the other side. He told his employees to guard the truck. While Hudiburg was away from his office for one hour, Roark, with the use of an extra set of keys, moved the truck from Hudiburg's lot. Roark, when asked on cross-examination if he knew that he took the truck against Hudiburg's consent, replied, "I suppose it was." On the very morning of the day that Roark took the truck, Hudiburg again refused Roark's request to permit him to have possession. Upon the basis of the repeated refusals to permit Roark to have possession, the several unfulfilled commitments both to GMAC and Hudiburg which Roark testified about and

admitted, and the stealthy manner of taking the truck, it can not be held that Roark's bona fide claim of right to the truck was established as a matter of law. The jury finding of theft should not have been disregarded.

■ We also sustain Hudiburg's contention that it, as bailee, was covered by the terms of the policy designated as "Policy B" by the Court of Civil Appeals. Insurer Globe argues that the policy covered only the owner of the truck, that Hudiburg was not the owner, and that a bailee was covered only upon proof that it was legally liable. Globe contends that the policy covered Hudiburg, the named insured, only by way of indemnity against its torts, such as its liability to GMAC for negligently permitting Roark to take the truck from the lot. The contention is not sound. The pertinent policy provisions are:

### Original Policy

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."

### "Endorsement 50

"The company agrees to pay within the limits stated in paragraph 4, all sums which the insured shall become obligated to pay by reason of liability imposed by law for direct loss of or damage including loss of use by theft, hereinafter called loss, to automobiles which are the property of others and in the custody of the insured for storage, repair or safekeeping, sustained under those coverages, for which a specific premium is set opposite thereto."

### "Endorsement 50A

"In consideration of an additional premium of $14.00, this policy is extended to cover for direct loss of or damage including loss of use by theft, hereinafter called loss, to automobiles which are the property of others and in the custody of the insured for storage, repair or safekeeping, sustained under coverages described in Endorsement 50, garage keeper's legal liability coverage endorsement, attached to this policy, for which a specific premium is set opposite thereto, regardless of the legal liability of the insured. This extension of coverage is to apply only when no specific insurance exists in the name of or for the account of the owner of any such automobile. Such insurance shall be provided in accordance with the terms and conditions of the policy and Endorsement 50 which are not inconsistent with the provisions of this endorsement. Where there is specific insurance in the name of or for the account of the owner, coverage under this policy shall attach only as provided by Endorsement 50, whether such specific insurance be valid or not.

Endorsement 50 insured Hudiburg for "all sums which the insured shall become obligated to pay by reason of liability imposed by law. * * *" Endorsement 50A broadened the coverage to include "direct loss of or damage including loss of use by theft * * * to automobiles which are the property of others and in the custody of the insured for storage, repair or safekeeping, sustained under coverages described in Endorsement 50 * * * regardless of the legal liability of the insured." Insurer Globe contends that its policy covered insured only in the event of the insured's legal liability, but the policy expressly affords coverage "regardless of insured's legal liability." Policies which contained language not so clear as that used in Endorsement 50A, have been generally held to cover the property itself and not by way of indemnity only. The general rule is stated in 29 Am.Jur., Insurance, § 295.

"Policy provisions covering property contained in specified places and 'for

which the insured is liable' have been held to insure against loss of the property and not to indemnify insured against his legal responsibility in tort or by contract to the owners of the property. * * *"

The rule permits the insured bailee to sue for all the losses and then account to the owner. California Ins. Co. v. Union Compress Co., 133 U.S. 387, 10 S.Ct. 365, 33 L.Ed. 730 (1890); Home Insurance Co. v. Baltimore Warehouse Co., 93 U.S. 527, 23 L.Ed. 868 (1876); Globe & Rutgers Fire Ins. Co. v. United States, 202 F.2d 696 (5th Cir.1953); American Eagle Fire Ins. Co. v. Gayle, 108 F.2d 116 (6th Cir.1939); Hartford Fire Ins. Co. v. Evans, 255 S.W. 487 (Tex.Civ.App.1923, no writ); Southern Cold Storage & Produce Co. v. A. F. Dechman & Co., 73 S.W. 545 (Tex.Civ.App.1903, no writ); Germania Ins. Co. v. Anderson, 15 Tex.Civ.App. 551, 40 S.W. 200 (1897, no writ); Home Ins. Co. v. Favorite, 46 Ill. 263 (1867); Sanford Mfg. Co. v. Western Mutual Fire Ins. Co., 229 Iowa 283, 294 N.W. 406 (1940); Rouse v. Albany Insurance Co., 257 N.C. 267, 125 S.E.2d 424 (1962); Lucas v. Liverpool & London & Globe Ins. Co., 23 W.Va. 258 (1883); Johnston v. Charles Abresch Co., 123 Wis. 130, 101 N.W. 395, 68 L.R.A. 934 (1904); 67 A.L.R.2d 1241; 53 A.L.R. 1409; 11 Couch on Insurance 2d, §§ 42:321, 42:330–332.

The jury found that the reasonable market value of the truck was $4,000.00, which would be the sum Hudiburg would ordinarily be entitled to recover as bailee for GMAC. Reef v. Hamblen, 47 S.W.2d 375 (Tex.Civ.App.1932, writ ref.); Indemnity Co. of America v. Slade, 4 S.W.2d 649 (Tex.Civ.App.1928, writ ref.). However, Hudiburg satisfied GMAC by paying the lesser sum of $2,428.83 and does not pray for recovery of the market value.

We construe the opinion of the Court of Civil Appeals to hold that there was no evidence of a theft and also that the policies did not afford coverage to Hudiburg, the bailee, and it is our opinion that both rulings are in error. Since the Court of Civil Appeals applied the wrong principles of law with respect to the issues of theft and policy coverage, and since Globe preserved a cross-point in that court which urged that the jury finding of theft was against the great weight and preponderance of the evidence, the cause will be remanded to that court.

Hudiburg has waived its $688.35 claim for parts, and that portion of the cause is severed and the judgment of the Court of Civil Appeals denying recovery is affirmed. That part of the judgment of the Court of Civil Appeals which denied recovery to Hudiburg for theft of the truck is reversed and the cause is remanded to the Court of Civil Appeals. Costs are adjudged against Globe.