# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50052

United States Court of Appeals
Fifth Circuit

**FILED**
January 23, 2014

Lyle W. Cayce
Clerk

UNITED NATIONAL INSURANCE COMPANY,

Plaintiff–Appellee

v.

MUNDELL TERMINAL SERVICES, INC.,

Defendant–Appellant

SCARBROUGH MEDLIN & ASSOCIATES, INC.; KEITH D. PETERSON & COMPANY, INC.,

Intervenor Defendants–Appellants

Appeals from the United States District Court
for the Western District of Texas

Before SMITH, PRADO, and ELROD, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Defendant Mundell Terminal Services, Inc. ("MTS") and Intervenor Defendants Keith D. Peterson & Company, Inc. ("KDP") and Scarbrough Medlin & Associates, Inc. ("SMA") appeal from the district court's grant of summary judgment in favor of Plaintiff United National Insurance Company ("UNIC") in this declaratory judgment insurance coverage dispute. The case involves certain property owned by BAL Metals International Incorporated ("BMI") that was stolen while MTS stored it in its warehouse. The district court held on summary judgment that UNIC's first-party property insurance

No. 13-50052

policy issued to MTS is excess to BMI's own insurance policy and, therefore, no coverage exists under UNIC's policy.  The district court also denied KDP's Rule 59 motion to amend.  For the reasons that follow, we affirm the district court in all respects.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

MTS operates a warehouse business in El Paso, Texas.  In 2008, BMI entered into a contract with MTS to store copper sheeting at one of MTS's warehouse facilities.  On November 28, 2010 and December 5, 2010, thieves stole BMI's copper, valued at $483,389.20, from the MTS warehouse.

Before the thefts, MTS had purchased a first-party property insurance policy from UNIC (the "UNIC policy").  The "Building and Personal Property Coverage Form" in the UNIC policy states in pertinent part: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The UNIC policy defines "Covered Property" to mean "the type of property described in this section, A.1, and limited in A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property."

Section A.1 of the UNIC policy lists and defines the following three categories of Covered Property:

(a) "Building";

(b) "[MTS's] Business Personal Property located in or on the building described in the Declarations . . ., consisting of the following unless otherwise specified[:] . . . (3) Stock"; and

(c) "Personal Property of Others that is: (1) In your care, custody or control; and (2) Located in or on the building described in the Declarations . . . ."

Though the bulk of these provisions are standard-form, the parties had expanded section A.1.b to include "Stock," elsewhere defined as "merchandise

2

held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping." Moreover, the "Supplemental Declarations" page provides a $500,000 coverage limit for "Stock, including Property of Others while in the insured's care, custody and control." A coverage extension permitted the parties to "extend the insurance that applies to [MTS's] Business Personal Property to apply to . . . Personal property of others in [its] care, custody or control" (the "Coverage Extension"). Coverage under this extension is limited to claims of $2,500 or less and it further provides that "[UNIC's] payment for loss of or damage to personal property of others will only be for account of the owner of the property."

Section A.2 limits section A.1 and lists seventeen categories of property not covered under the UNIC policy. Under section A.2.k ("Exclusion K"), in particular, "Covered Property does not include: . . . Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance[.]"

Aon Risk Solutions issued an insurance policy to BMI (the "Aon policy"), which covers the stolen copper. The Aon policy has a policy limit of $25 million. The UNIC policy has a policy limit of $500,000.

In response to MTS's timely claims for the copper thefts, UNIC sent a "reservation of rights" letter to MTS on December 31, 2010. On January 5, 2011, pursuant to the Aon policy, Aon paid BMI $483,389.00 for the loss. On February 24, 2011, Aon, as subrogee of BMI, filed a law suit against MTS (the "BMI lawsuit"). In March 2011, MTS requested that UNIC defend it in the BMI lawsuit. UNIC rejected MTS's request because the UNIC policy did not provide liability coverage of any kind.

On December 15, 2011, UNIC brought this declaratory judgment action. In its suit, UNIC sought the following three declarations: (1) UNIC has no duty

to defend or indemnify MTS against the claims asserted in the BMI suit because the UNIC policy does not provide liability coverage to MTS; (2) Exclusion K of the UNIC policy precludes coverage for the thefts of BMI's copper; and (3) UNIC has no duty to reimburse MTS or BMI for amounts paid by Aon for the full value of the stolen copper because the UNIC policy is excess to the Aon policy under section G.2 of the "Commercial Property Conditions" of the UNIC policy.

On June 20, 2012, UNIC moved for summary judgment in its declaratory judgment action, which MTS and BMI opposed. On July 25, 2012, KDP filed an intervenor complaint and, on August 13, 2012, SMA did the same. KDP, as the authorized managing general underwriter for UNIC's forest products industry insurance, issued the UNIC policy. SMA, a Texas insurance broker, requested the coverage for MTS. KDP and SMA separately opposed UNIC's motion for summary judgment.

On December 21, 2012, the district court granted summary judgment in favor of UNIC on the first and second declarations. The district court found that "there is no genuine dispute as to the fact that the UNIC policy does not impose upon UNIC any duty to defend or indemnify MTS in the BMI suit," and that "there is no genuine dispute as to the material fact that the Exclusion (k) provision precludes coverage for the thefts of the copper under the UNIC policy." The district court did not reach the third declaration regarding UNIC's alternative claim that section G.2 of the "Commercial Property Conditions" precludes coverage for the thefts. KDP then filed a Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e), which the court denied on February 4, 2013.

No. 13-50052

MTS, KDP, and SMA (collectively "Appellants") timely appealed the district court's judgment excluding coverage.[1]  KDP also appeals the district court's denial of its Rule 59 motion to amend.

## II.    JURISDICTION

Appellants seek review of a final judgment of the district court. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III.    STANDARD OF REVIEW

We review the district court's ruling on summary judgment de novo, applying the same standard as the district court in the first instance.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted).    Having diversity jurisdiction over this action, we apply the substantive law of the forum state.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In the underlying action, Texas is the forum state and, thus, Texas law governs this dispute.

Texas courts "construe insurance policies according to the same rules of construction that apply to contracts generally."  *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008).    When interpreting insurance contracts, courts seek "to ascertain the true intentions of the parties as expressed in the instrument."  *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).  To this end, Texas courts "examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless," *id.*; give policy terms "their ordinary and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning," *Don's Bldg. Supply, Inc.*, 267 S.W.3d

---

[1] MTS, KDP, and SMA each filed their own briefing.  MTS's brief does not, however, raise any independent arguments, merely incorporating SMA's brief.  KDP's brief also largely mirrors SMA's brief.  Accordingly, this opinion primarily references SMA's brief even though all three appellants have filed briefs.

at 23; and "strive to honor the parties' agreement and not remake their contract by reading additional provisions into it," *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).

Moreover, courts must decide if a contract contains ambiguous provisions. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) ("Whether a contract is ambiguous is a question of law . . . ."). If the contract "can be given a definite or certain meaning as a matter of law," courts will not consider the contract to be ambiguous. *Id.* A provision is not ambiguous "simply because the parties interpret a policy differently." *Gilbert*, 327 S.W.3d at 133; *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998). Rather, a court will find a term ambiguous if "the language of a policy or contract is subject to two or more reasonable interpretations." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If a contract is ambiguous, such ambiguity will be construed against the insurer. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990) ("Where an insurance policy's provisions are ambiguous or inconsistent, and is [sic] subject to two or more reasonable interpretations, then that construction which affords coverage will be the one adopted.").

## IV.   DISCUSSION

We first address the district court's grant of UNIC's motion for summary judgment and then turn to the district court's denial of KDP's Rule 59 motion.

**A. UNIC's Motion for Summary Judgment**

At issue is whether the theft of the copper is covered under the UNIC policy. Under section A.1, "Covered Property" means (1) the type of property described in section A.1, (2) subject to the limitations in section A.2, (3) for which the Declarations show a limit of insurance. The parties do not dispute that the copper is property described in section A.1, or that the Supplemental

No. 13-50052

Declaration page states a limit in the amount of $500,000. Rather, the dispute primarily focuses upon whether Exclusion K of the UNIC policy precludes coverage for the thefts of the stolen copper.

Exclusion K is commonly characterized as an excess "other insurance" clause, which will vary, limit, or eliminate the insurer's obligation to reimburse the insured where other insurance may cover the same loss. 15 Couch on Insurance § 219:1 (2009 & Supp. 2012). "The well-known and evident purpose of such 'other insurance' [clauses] is to avoid and guard against the moral hazards and attendant temptations to fraud which might be reasonably expected to arise out of the existence of undisclosed concurrent policies of insurance having identity of scope and of subject matter." *Dubuque Fire & Marine Ins. Co. v. Reynolds Co.*, 128 F.2d 665, 666 (5th Cir. 1942).

Under Texas law, "[t]he provisions of an 'other insurance' clause apply only when the 'other' insurance covers the same property and interest therein against the same risk in favor of the same party." *Hartford Cas. Ins. Co. v. Exec. Risk Specialty Ins. Co.*, No. 05-03-00546-CV, 2004 WL 2404382, at *2 (Tex. App.—Dallas Oct. 28, 2004, pet. denied) (mem. op.). Applying this test, the parties do not dispute that the two policies cover the same property—BMI's copper—against the same risk of theft. This leaves to our determination: (1) what interests in the copper the policies cover, and (2) in whose favor. We address each in turn.

1. Coverage of the Same Interest

The parties agree that, by storing BMI's goods in MTS's warehouse, the two formed a bailor–bailee relationship. Texas law allows a bailee to insure bailed goods for their full value, for the benefit of itself and the bailor. *Anchor Cas. Co. v. Robertson Transp. Co.*, 389 S.W.2d 135, 138 (Tex. Civ. App.— Corpus Christi 1965, writ ref'd n.r.e.). Alternatively, a bailee may insure only its limited interest in the bailed goods by employing express language to that

7

effect. *See Cumis Ins. Soc., Inc. v. Republic Nat'l Bank of Dall.*, 480 S.W.2d 762, 764 (Tex. Civ. App.—Dallas 1972, writ ref'd n.r.e.).  Where such limiting language is absent from an insurance policy, Texas law presumes that a bailee has insured both its interest and the bailor's interest when the bailee takes an insurance policy on the bailed goods.  *See id.* at 764–65.

SMA argues, in two steps, that this presumption should not apply here. First, SMA asserts that the term "interest" as used in the "other insurance" test is properly construed as "insurable interest."  Second, SMA contends that the UNIC policy and the Aon policy insure distinct "insurable interests."  In SMA's view, the UNIC policy insured MTS's "insurable interest" as the bailee of the copper, which specifically includes its duty to account and return the copper to BMI, and its pecuniary interest in earning income, retaining customers, and generating goodwill.  In contrast, the Aon policy insured only "BMI's insurable interest as the owner of the copper."  We disagree with SMA at both steps.

First, SMA does not point to any Texas case, and we have not found any, that utilizes "insurable interest" when applying the "other insurance" test.  On the contrary, Texas law applies the doctrine of "insurable interest" when assessing the validity of insurance contracts, *see Jones v. Tex. Pac. Indem. Co.*, 853 S.W.2d 791, 794 (Tex. App.—Dallas 1993, no writ), which is not at issue here.  The purpose of the "insurable interest" doctrine is to discourage the use of insurance for illegitimate purposes, such as wagering.  *E.g. Valdez v. Colonial Cnty. Mut. Ins. Co.*, 994 S.W.2d 910, 914 (Tex. App.—Austin 1999, pet. denied); *Pac. Fire Ins. Co. v. John E. Morris Co.*, 12 S.W.2d 971, 971 (Tex. Comm'n App. 1929).  SMA offers no support for its proposition that "insurable interest" as used in that context should be similarly applied in the "other insurance" test, and we reject SMA's attempt to do so.

8

Second, SMA fails to cite any language in the UNIC policy that limits coverage to MTS's interests as bailee.  Thus, under Texas law, we presume that MTS has insured both its interest and BMI's interest.  Even if SMA can point to distinct "insurable interests" between the UNIC policy and the Aon policy, their coverage "need not be completely coextensive to be considered 'other insurance' as to each other."  *See Nutmeg Ins. Co. v. Emp'rs Ins. Co.*, No. 3:04-CV-1762, 2006 U.S. Dist. LEXIS 7246, at *36 (N.D. Tex. Feb. 24, 2006) (citing *Am. Cent. Ins. Co. v. Harrison*, 205 S.W.2d 417, 420 (Tex. Civ. App.—Eastland 1947, writ ref'd n.r.e.)).  Both policies cover at least BMI's interest in the copper itself.  This sufficiently constitutes coverage of the same interest under the "other insurance" test.  *See Liverpool & London & Globe Ins. Co. v. Delta Cnty. Farmers' Ass'n*, 121 S.W. 599, 601 (Tex. Civ. App. 1909, writ ref'd) ("[W]herever there are two separate insurers liable for the same loss the fact that one policy covers more property or wider risks than the other does not prevent the insurance being double on the subjects covered by both." (citations omitted)).

2. Coverage in Favor of the Same Party

To help determine which party the UNIC policy favors, we first resolve an underlying dispute: whether the stolen copper is properly classified as "[MTS's] Business Personal Property" under section A.1.b or as "Personal Property of Others" under section A.1.c.  SMA categorizes the copper as MTS's stock under section A.1.b, which generally covers "[MTS's] Business Personal Property located in or on the building described in the Declarations" and to which the parties added the sub-category "Stock."  SMA argues that BMI's copper is "Stock" under A.1.b because the Supplemental Declarations provide a coverage limit for "Stock, including Property of Others while in the insured's care, custody and control."

According to UNIC, the copper falls under section A.1.c, which covers "Personal Property of Others that is: (1) In your care, custody, and control; and

No. 13-50052

(2) Located in or on the building described in the Declarations." In support, UNIC relies upon the plain language of the policy and contends that the copper was owned by BMI, and thus is Personal Property of Others under section A.1.c. Even if the copper is considered "Stock," UNIC asserts that the coverage for "Stock, including Property of Others" as stated in the Supplemental Declarations falls under section A.1.c by way of the Coverage Extension. Finally, UNIC argues that we should reject SMA's argument that the copper falls under A.1.b because this argument is being raised for the first time on appeal.

We agree with UNIC's final point and hold that SMA waived the issue of whether coverage for the stolen copper would fall under section A.1.b or section A.1.c. *See Conley v. Bd. of Trs. of Grenada Cnty. Hosp.*, 707 F.2d 175, 178 (5th Cir. 1983) (stating as a "general principle of appellate review," failure to raise an argument before the district court waives that argument, unless the issue is a purely legal one and the asserted error is so obvious that the failure to consider it would result in a miscarriage of justice); *see also XL Specialty Ins. Co. v. Kiewit Offshore Servs. Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008) ("An argument not raised before the district court cannot be asserted for the first time on appeal." (citing *Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 358 n.19 (5th Cir. 2000))). SMA does not dispute that it failed to argue before the district court that coverage falls under section A.1.b, despite UNIC's assertion on summary judgment that section A.1.c controls. Rather, SMA replies only that it did not "advance a new theory or issue on appeal" because it had argued before the district court that:

> [C]overage exists because MTS had a reasonable expectation of coverage and such interpretation was reasonable; under Texas rules of construction, MTS's reasonable interpretation must be adopted; and because the term "other insurance" is not defined in the Policy, the term is ambiguous and consistent with controlling

10

authorities MTS's reasonable interpretation that provided coverage must be adopted.

Nothing in these arguments remotely indicates an argument that coverage applies under section A.1.b. SMA's argument regarding MTS's "reasonable expectation of coverage," for example, was simply that MTS reasonably expected that it was procuring coverage that would cover a storage customer's stolen property. SMA suggested nothing about which category of property that coverage may be provided under, much less contested UNIC's position that section A.1.c controlled. Similarly devoid of any argument that coverage is provided under section A.1.b., SMA's argument concerning MTS's "reasonable interpretation" was only that "other insurance"—for purposes of the "other insurance" test—must be insurance that benefits MTS. Broadly arguing that "other insurance" must benefit MTS, however, does not encapsulate every possible theory and argument in support thereof. Neither of these arguments raised the section A.1.b argument "to such a degree that the trial court may rule on it." *See XL Specialty*, 513 F.3d at 153 (citation and internal quotation marks omitted). The issue is waived and, thus, the stolen copper is properly classified as property under section A.1.c, subject to the limitations set forth in section A.2.

Continuing to apply the "other insurance" test, then, we hold that both the UNIC policy and the Aon policy are in favor of BMI. Section A.1.c of the UNIC policy provides that UNIC's "payment for loss of or damage to personal property of others will only be for the account of the owner of the property." As the district court correctly noted, "[t]he plain meaning of the phrase 'for the account of' suggests that the [UNIC] policy covers the personal property of others on behalf of, or for the benefit of, the owners of the property." Furthermore, as the district court also observed, section A.1.c limits any payment "only" to the account of the owner of the personal property, thereby

11

demonstrating the parties' intent to solely benefit the owner of the property and not the insured.  Consequently, because the owner of the copper is BMI, any loss incurred under the UNIC policy would actually be paid to BMI, and thus the UNIC policy is in favor of BMI.  As there is no dispute that the Aon policy is also in BMI's favor, this element of the "other insurance" test is also satisfied.

The UNIC policy and the Aon policy thus cover the same property and interest therein, i.e., BMI's interest in the copper; against the same risk, i.e., theft; and in favor of the same party, i.e., BMI.  We therefore hold that the Aon policy constitutes "other insurance" with respect to the UNIC policy.  Pursuant to Exclusion K, no coverage exists under the UNIC policy for the thefts of BMI's copper.

SMA complains that "[t]he implications of [such a holding] are profound—MTS now faces a subrogation claim that would not exist if UNIC honored the property insurance policy MTS purchased, and for which payment of loss is not dependent on fault."  To be sure, "dueling coinsurers must place the interests of their insureds before their own," *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 308 (5th Cir. 2010), and insurers must "'give dominant consideration to the rights of the insured,'" *id.* (quoting *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 588–89 (Tex. 1969)).  That MTS now must face a subrogation claim, however, has no bearing here because the UNIC policy is a first-party property policy and does not provide liability coverage of any kind.  "Property insurance policies are intended solely to indemnify the insured for his actual monetary loss by the occurrence of the disaster. . . .  Liability policies, on the other hand, insure against loss arising out of legal liability, usually based upon the assured's negligence." *Highlands Ins. Co. v. City of Galveston, Tex.*, 721 S.W.2d 469, 471 (Tex. App.—Houston [14th] 1986, writ ref'd n.r.e.) (citation and internal

quotation marks omitted).  While a liability policy may insure against a loss arising out of the subrogation claim MTS now faces, MTS chose not to procure such insurance.  We reject SMA's attempt to inject a concern regarding the subrogation claim where MTS has not retained liability insurance and where UNIC, as the district court found, has no duty to defend or indemnify.

Accordingly, we affirm the district court's grant of summary judgment.

## B. KDP's Rule 59 Motion to Amend

Following the district court's grant of summary judgment in favor of UNIC, KDP brought a motion to amend the judgment under Federal Rule of Civil Procedure 59(e), alleging factual and legal conflicts between the district court's Final Judgment and its accompanying Memorandum Opinion and Order.  The Final Judgment stated that "[n]o coverage exists under Policy No. KPM0000170 for the thefts of [BMI's] copper occasioned on or about November 25, 2010, and December 4, 2010, at [MTS's] warehouse."  On appeal, KDP argues that the district court erred in denying its request to amend or alter the judgment to reflect that coverage existed under the undisputed terms of the UNIC policy—as stated in the Memorandum Opinion and Order—and to clarify or correct the Final Judgment to reflect that the "no coverage" finding was the result of the application of a policy exclusion.  KDP asserts that this "risks a manifest injustice" against KDP because the judgment, left unaltered, "raises significant risk of improper application of collateral estoppel or res judicata effects."

"A Rule 59(e) motion must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot raise issues that could, and should, have been made before the judgment issued." *Advocare Int'l LP v. Horizon Labs., Inc.*, 524 F.3d 679, 691 (5th Cir. 2008) (internal quotation marks and footnotes omitted).  This Court reviews "the denial of a Rule 59(e)

motion only for abuse of discretion." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).

We discern no conflict between the district court's final judgment and its memorandum opinion.  As the district court explained in its order denying the motion, "the ultimate issue before the Court was not whether the thefts of the copper were or were not covered under the declaration pages of the policy—in isolation from the provisions in the rest of UNIC's policy . . . but was whether 'the thefts of the copper [were] not covered under *its policy*.'"  KDP does not allege that the district court erred in this formulation of the issue.  To resolve this issue, the district court first found that the copper was a type of property described in section A.1 before finding that a limitation in section A.2 applied.  Neither finding, however, is in conflict with the court's declaration of "no coverage" because, under the policy as a whole, section A.2 limits section A.1.  The district court therefore did not abuse its discretion in denying KDP's Rule 59 motion.  Accordingly, we affirm.

## V.   CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of UNIC and AFFIRM the district court's denial of KDP's Rule 59 motion.