# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 24, 2014

Lyle W. Cayce
Clerk

No. 13-20341
Summary Calendar

W.W. ROWLAND TRUCKING COMPANY, INCORPORATED, also known as
and doing business as W.W. Rowland Trucking, Co., Inc.,

Plaintiff – Appellee

v.

MAX AMERICA INSURANCE COMPANY, also known as Alterra America
Insurance Company,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-91

Before KING, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Max America Insurance Company appeals the
judgment of the district court ordering it to pay an insurance claim of $300,000
for the theft of property from Plaintiff-Appellee W.W. Rowland Trucking
Company, Inc.'s Dallas, Texas truck terminal, in addition to an 18% penalty

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 13-20341

and attorney's fees.  For the foregoing reasons, we AFFIRM the judgment of the district court.

## I.     Factual & Procedural Background

Plaintiff-Appellee W.W. Rowland Trucking Company, Inc. ("Rowland") transported a load of video game consoles valued at $354,000 from Marshall, Texas, to its Dallas, Texas terminal.  Thieves stole the tractor/trailer loaded with the consoles while it was located at the Dallas terminal.  At the time of the theft, Rowland had an insurance policy ("the Policy") with Defendant-Appellant Max America Insurance Company, also known as Alterra America Insurance Company ("Alterra").  The Policy's section entitled "Coverage" provides for "Legal Liability Coverage," which covers Rowland's

> [L]egal liability for loss to covered property: a. while under [Rowland's] care, custody, and control; [and] b. that [Rowland] become[s] legally obligated to pay as a common or contract carrier under a bill of lading, contract of carriage, or shipping receipt that is issued by [Rowland] or that is issued on [Rowland's] behalf.

Under the "Property Covered" section, the Policy provides coverage for "Property in Vehicles," defined as "direct physical loss caused by a covered peril to property of others described on the 'schedule of coverages' while in due course of 'transit' including loading and unloading."  The parties do not dispute that theft is a "covered peril."[1]  The Policy also provides that all eight of Rowland's terminals must be "100% fenced, gated, locked and lighted 24 hours per day, 7 days per week," or else the "[c]overage is null and void."  The Policy had a limit of $300,000, and included a $2,500 deductible.

Following the theft, Rowland filed a claim with Alterra.  Alterra investigated the loss and determined that the thieves entered and left the property by cutting a hole in the fencing along the eastern perimeter of the

---

[1] The record does not contain a copy of the complete insurance policy or the "schedule of coverages."  However, neither party contends that theft is not covered by the policy.

No. 13-20341

Dallas terminal.  However, Alterra ultimately denied the claim because it discovered that there were gaps in the fence along the southern and western perimeters in violation of the Policy's fencing provision.

Rowland subsequently filed this lawsuit in state court alleging negligence, breach of contract, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices-Consumer Protection Act.  Alterra removed the case to federal court on the basis of diversity jurisdiction.  The parties filed cross-motions for summary judgment, and the district court held a hearing on the motions.  The district court applied Texas's Anti-Technicality Statute, Tex. Ins. Code Ann. § 862.054 (West 2013), which requires that there be a causal link between the breach in the policy provision and the loss in order for an insurer to deny a claim under a property insurance policy.  The district court held that the breach of the Policy's fencing provision did not cause the theft loss, and it concluded that Alterra breached its contract with Rowland by failing to pay on Rowland's claim.  The district court entered summary judgment in Rowland's favor, and it ordered Alterra to pay the claim plus 18% interest per year in damages and attorney's fees.  Alterra moved for reconsideration, which the district court denied.  Alterra timely appealed.

## II.    Legal Standards

We review the district court's ruling on summary judgment de novo, applying the same standard as the district court in the first instance. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  Because we have diversity jurisdiction over this action, we must apply the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  It is undisputed that Texas law governs this matter.

We review the district court's award of prejudgment interest for abuse of discretion. *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 214 (5th Cir. 2006).

No. 13-20341

## III.  Discussion

Alterra raises three issues on appeal.  First, it claims that summary judgment in Rowland's favor is improper.  According to Alterra, Texas's Anti-Technicality Statute, Tex. Ins. Code Ann. § 862.054 (West 2013), does not apply to the present claim because Rowland has a liability insurance policy as opposed to a property policy, and the Anti-Technicality Statute does not govern a liability policy.  Second, Alterra asserts that the district court erred in ordering it to pay 18% interest to Rowland under the Prompt Payment of Claims Statute, Tex. Ins. Code Ann. §§ 542.051–.061, because the statute only applies to first-party claims and this is a third-party claim.  Lastly, Alterra argues that even if we affirm the district court's decision to grant summary judgment, we should reverse its award of attorney's fees since Rowland's initial demand for damages was in excess of the insurance policy's limits.  We address each in turn.

### A. Application of the Anti-Technicality Statute

Alterra argues that the district court erred in applying Texas Insurance Code § 862.054, also known as the Anti-Technicality Statute, to Rowland's insurance claim because, according to Alterra, the statute applies only to property insurance coverage and not to liability insurance coverage.  The Anti-Technicality Statute provides:

> Unless the breach or violation contributed to cause the destruction of the property, a breach or violation by the insured of a warranty, condition, or provision of a fire insurance policy *or contract of insurance on personal property*, or of an application for the policy or contract: (1) does not render the policy or contract void; and (2) is not a defense to a suit for loss.

Tex. Ins. Code Ann. § 862.054 (emphasis added).  The district court applied the Anti-Technicality Statute to Rowland's insurance claim, explaining that the statute uses the phrase "personal property" in contrast to "real property," and

4

the stolen property at issue was "clearly" not real property, so the statute applied. The district court also found that Rowland, as a common carrier, acted as a bailee for the cargo owner, so Rowland maintained all of the rights and responsibilities of a legal owner. Such rights include "the right to recover the full value of bailed goods as though it was the owner." Additionally, in response to Alterra's claim that the statute did not apply to liability policies, the district court commented that none of the legal sources on which Alterra relied expressly supported its position, but did not ultimately decide this question. The district court interpreted the statute to mean that "recovery depends on the loss suffered—as opposed to the type of insurance chosen." Since Alterra had not shown that the pre-existing gaps in the fence aided in the theft, under the statute, the Policy was still valid and Alterra's failure to pay Rowland for the claim amounted to a breach of contract.

On appeal, Alterra argues that the insurance contract with Rowland is a liability policy and, as such, the Anti-Technicality Statute does not apply.[2]

---

[2] This argument assumes that application of the Anti-Technicality Statute depends on the nature of the insurance policy, not the nature of the loss. Rowland contends that the opposite is true—that the application of the statute depends on the nature of the loss. According to Rowland, since the loss here was of personal property, the statute applies. We disagree and find Rowland's interpretation of the statute unconvincing based on the plain text of the statute. The statute applies to "a fire insurance *policy* or a *contract of insurance* on personal property." Tex. Ins. Code Ann. § 862.054 (emphasis added). This language clearly refers to the type of policy and not simply the type of loss. *See generally Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 362 (Tex. 2013) (holding when interpreting statutes, courts must give "words their plain, ordinary meaning unless the statute indicates an alternative meaning"). The district court's conclusion was based only in part on the interpretation of the statute that Rowland argues for, and as to that part, we respectfully disagree.

Alterra's challenge also claims that a liability policy would be excluded from the Anti-Technicality Statute. We note that a liability policy is not included in the plain language of the statute. *See* Tex. Ins. Code Ann. § 862.054. However, since we find that the relevant coverage in Rowland's insurance contract amounts to property insurance, we need not address Alterra's assertion that the Anti-Technicality Statute does not apply to a liability policy.

No. 13-20341

Rowland counters that the Policy is a property policy.[3]  Whether a policy is a property policy, liability policy, or both, depends on the policy's language. *See Highlands Ins. Co. v. City of Galveston*, 721 S.W.2d 469, 471 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).  Texas law distinguishes between property insurance and liability insurance.  "A policy of property insurance is a personal contract for indemnity for the insurable interest possessed by the insured at the time of the issuance of the policy, and also at the time of the loss." *Id.*  "Coverage in a property policy is commonly provided by reference to causation, such as 'loss caused by . . .' certain enumerated forces.  It is precisely these physical forces that bring about the loss." *Warrilow v. Norrell*, 791 S.W.2d 515, 527 (Tex. App.—Corpus Christi 1989, writ denied) (citation omitted) (alteration in original).  Liability insurance provides coverage based on "traditional tort concepts of fault, proximate cause, and duty." *Id.* at 528; *see also Highlands*, 721 S.W.2d at 471 ("Liability policies . . . insure against loss arising out of legal liability, usually based upon the assured's negligence.").

Policies that reference the insured's "legal liability" are not by default liability insurance contracts.  *See, e.g.*, *Hudiburg Chevrolet, Inc. v. Globe Indem. Co.*, 394 S.W.2d 792, 796–97 (Tex. 1965).  In Texas, "[p]olicy provisions covering property contained in specific places and 'for which the insured is liable,' have been held to insure against loss of the property and not to indemnify insured against his legal responsibility in tort or by contract to the owners of the property." *Id.* (citing 29 Am. Jur. Insurance § 295).  This is because an insured bailee may sue for losses and account to the owner. *See id.* at 797.  In fact, absent limiting language in an insurance policy, "Texas law

---

[3] Alterra argues that Rowland has waived this argument since it is raised for the first time in Rowland's response brief.  Yet, Alterra argues here, and argued before the district court, that the policy was a liability policy, not a property policy.  Thus, we find that Alterra sufficiently raised this issue and it has not been waived.

No. 13-20341

presumes that a bailee has insured both its interest and the bailor's interest when the bailee takes an insurance policy on the bailed goods." *United Nat'l Ins. Co. v. Mundell Terminal Servs., Inc.*, --- F.3d ----, 2014 WL 260595, at *4 (5th Cir. Jan. 23, 2014) (citing *Cumis Ins. Soc'y, Inc. v. Republic Nat'l Bank of Dall.*, 480 S.W.2d 762, 764–65 (Tex. Civ. App.–Dallas 1972, writ ref'd n.r.e.)).

Policies that insure against the theft of property belonging to a third party while under the control of the insured have previously been considered property policies under Texas law.  In *Hudiburg*, the insured, Hudiburg Chevrolet, had a contract with a third party to store a truck, and the truck was stolen from the premises.  *See* 394 S.W.2d at 793–94.  Hudiburg Chevrolet's insurance policy covered "all sums which the insured shall become obligated to pay by reason of liability imposed by law for direct loss of or damage including loss of use by theft . . . to automobiles which are the property of others and in the custody of the insured for storage . . . ."  *Id.* at 796.  The insurance company argued that the policy covered Hudiburg Chevrolet only "in the event of the insured's legal liability."  *Id.*  However, the Texas Supreme Court disagreed, explaining that the policy covered "the property itself and not by way of indemnity only," and that the policy amounted to property insurance, even though the insured did not own the property and was only "liable" for the property.  *Id.* at 796–97.  Although the property was owned by a third party, and Hudiburg had a legal duty to that third party, the loss was still covered by the terms of the property policy.

We recently decided *United National*, which involved similar facts to those before us here, and in so doing, we described the nature of the applicable insurance policy.  In *United National*, a company owned a warehouse which stored copper sheeting pursuant to a contract with the owner.  2014 WL 260595, at *1.  The company that owned the warehouse had an insurance policy that covered "direct physical loss of or damage to Covered Property at

7

the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." *Id.* The policy covered the theft of the personal property of others that was in the insured's "care, custody, or control." *Id.* We discussed the nature of the insurance policy and concluded that since the warehouse was a bailee of the copper sheeting, the insurance policy covering the loss of the sheeting due to theft was a "first-party property policy." *Id.* at *7.

Alterra urges us to apply *Esco Transportation Company v. General Insurance Company of America*, 75 F. App'x 936, 939 (5th Cir. 2003), to the present case, arguing that *Esco* held that a policy with similar language to the policy at issue here constituted a liability policy. This is a misstatement of the case. The legal question at issue in *Esco* was whether the insured had provided sufficient proof to the insurance company to establish its loss. *Id.* In discussing this issue, we repeatedly referred to the insured's "legal liability" to a third-party owner of property for the loss of that property. *Id.* We did not, however, explicitly characterize the underlying insurance policy as a liability policy, as opposed to a property policy. *Id.*

Like the policies at issue in *Hudiburg* and *United National*, Rowland's Policy clearly states that it covers the "loss of property of others . . . while in due course of 'transit' including loading and loading." Moreover, just as in *Hudiburg* and *United National*, Rowland's claim is based on the theft of property owned by a third party while in Rowland's custody. Although the Coverage section of the Policy states that it covers Rowland's "legal liability for loss to the covered property," the use of "legal liability" and the fact that a third-party owned the property does not transform the policy into a liability policy. *See, e.g.*, *Hudiburg* 394 S.W.2d at 796–97. As a bailee, Rowland had an insured interest in the stolen video game consoles. Thus, the relevant portions of Rowland's Policy covering those consoles amount to property

No. 13-20341

insurance, not liability insurance.  Therefore, we hold that the district court properly applied the Anti-Technicality Statute.

### B. Prompt Payment Statute

Alterra claims that the district court erroneously ordered Alterra to pay an 18% penalty to Rowland, in addition to the amount of the claim and attorney fees, and that the district court improperly calculated the date from which the interest would accrue.  The Texas Insurance Code includes a subchapter providing for the "Prompt Payment of Claims."  *See* Tex. Ins. Code Ann. §§ 542.051–.061 ("Prompt Payment Statute").  In the event an insurance carrier fails to meet its obligations under the statute, such as by refusing to timely pay a valid claim, the claimant is entitled to 18% interest as damages and reasonable attorney's fees.  *Id.* § 542.060.  By its terms, the Prompt Payment Statute only applies to first-party claims.  *Id.* § 542.051.  Alterra argues that Rowland's claim is a third-party claim, so the statute does not apply.

The Prompt Payment Statute does not define first-party claims, but Texas law distinguishes between first-party and third-party claims "based on the claimant's relationship to the loss."  *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 674 (Tex. 2008).  In a first-party claim, the insured "seeks recovery for the insured's own loss"; in a third-party claim, the insured "seeks coverage for injuries to a third party."  *Id.* at 674 (internal quotation marks and citations omitted).  Because a bailee has an insurable interest in the bailed goods, *see Cumis Ins. Soc'y, Inc.*, 480 S.W.2d at 766, insurance claims to recover for losses to the bailed goods are first-party claims, *cf. United Nat'l*, 2014 WL 260595, at *4.  Rowland's claim is a first-party claim because Rowland has an insured interest in the game consoles.  Thus, the Prompt Payment Statute applies.

Alterra also claims that the district court's imposition of the penalty with an accrual date of April 11, 2011, is improper because it claims that it was not

9

No. 13-20341

presented with proof of the value of the stolen cargo until March 15, 2013. Rowland contends that the accrual date of April 11, 2011, is appropriate because Alterra had sixty days from when Alterra issued its February 9, 2011 report to pay the claim, and Alterra's own report showed that the loss exceeded the $300,000 policy limit. Since Alterra was fully aware that the loss exceeded the policy limit as of April 11, 2011, we find that the district court did not abuse its discretion in awarding prejudgment interest accruing as of this date. *Jauch*, 470 F.3d at 214.

### C. Attorney's Fees

Alterra's final claim is that the district court improperly awarded attorney's fees to Rowland. Alterra's argument is specific to awards of attorney's fees made pursuant to Chapter 38 of the Texas Insurance Code, and it does not challenge the award of attorney's fees under the Prompt Payment Statute (aside from the previously rejected argument). The Prompt Payment Statute applies to this claim, and the statute provides for awards of reasonable attorney's fees in addition to the 18% penalty. *See* Tex. Ins. Code Ann. § 542.060. Thus, we affirm the award of attorney's fees under the Prompt Payment Statute.

## IV.   Conclusion

We AFFIRM the judgment of the district court.